Mrs. Jennie ORRILL, Appellant,

v.

Houston ORRILL et al., Appellees.

No. 6727.

Court of Civil Appeals of Texas.

Texarkana.

Sept. 9, 1954.

Traylor Russell, Mt. Pleasant, for appellant.

R. T. Wilkinson, Mt. Vernon, for appellees.

FANNING, Justice.

This is a partition suit on approximately 91 acres of land in Franklin County, Texas. Z. Orrill and wife, ancestors of appellees, owned the land except 10 acres which were purchased by S. H. Orrill, father of appellees, from Talbott and wife on January 4, 1905. Z. Orrill and wife died intestate long prior to 1900 and were survived by four children, namely: G. F. Orrill, Louis Orrill, Mrs. M. J. Sustaire and S. H. Orrill. S. H. Orrill was first married to Annie Rozier Orrill and to this marriage there were born five children, namely: Houston Orrill, Cynthia Fenn, Ruby Spruill, Maggie Reid and Willie Allen, who were plaintiffs in the trial court and are appellees here. Annie Rozier Orrill died intestate on April 21, 1900, and was survived by her husband, S. H. Orrill, and the five children. S. H. Orrill married Jennie Orrill on September 23, 1900, and to this marriage was born one child, Vera Jackson. S. H. Orrill died intestate on May 14, 1930, and was survived by the five children of his first marriage, the child of his second marriage, and his second wife. The defendants in the trial court were the second wife, Jennie Orrill, and Vera Jackson, the only child of the second marriage.

By deed dated December 1, 1902, G. F. Orrill and Louis Orrill conveyed to S. H. Orrill their interest in the lands they inherited from their deceased father, Z. Orrill, and mother, for a cash consideration of $500. On December 12, 1903, Mrs. M. J. Sustaire, joined by her husband, conveyed her interest in the lands which she inherited from her parents to S. H. Orrill

for a cash consideration of $300. On January 4, 1905, Talbott and wife conveyed to S. H. Orrill 10 acres of land for a cash consideration of $125. On January 4, 1905, S. H. Orrill and wife, J. M. (Jennie) Orrill, conveyed to Talbott 8¾ acres for a cash consideration of $125. This 8¾-acre tract was a part of the lands originally owned by Z. Orrill and wife, and in which S. H. Orrill inherited a ¼ interest, and purchased a ¾ interest from his brothers and sister. The lands that were the subject-matter of the suit were the 10 acres purchased from Talbott, and the Z. Orrill lands, less the 8¾ acres conveyed to Talbott. The trial court held that the 10 acres was community property of S. H. Orrill and wife, Jennie Orrill; and in response to answers made by the jury to the two special issues submitted, the court entered judgment to the effect that the remaining lands were owned by S. H. Orrill and the children of the first marriage, and specifically the judgment awards to each plaintiff 1¼₆₀ in the so-called Z. Orrill lands and defendant Vera Jackson, a ¹⁄₁₂ interest in the same lands. In the 10 acres purchased from Talbott, Jennie Orrill is award a ½ interest and each plaintiff and Vera Jackson a ¹⁄₁₂ interest. Jennie Orrill was awarded a homestead interest in the 10 acres and ⅝ of the so-called Z. Orrill lands with partition ordered for the remaining lands. Mrs. Jennie Orrill is very aged and mentally unbalanced, and the attorney presenting her appeal was appointed by the court to represent her. Her motion for new trial and for judgment non obstante veredicto were overruled and she appeals.

Appellant presents two points which are as follows: "First Point: S.H. Orrill and the appellant, Jennie Orrill, having married in 1900, lands purchased by S. H. Orrill in 1902 and 1903 are presumptively community property, and the fact that S. H. Orrill was a person of limited means would not be sufficient evidence to rebut the presumption of community property to the extent that judgment could be entered to the effect that separate funds of S. H. Orrill and appellees were used in the purchase of the lands. Second Point: S. H.

Orrill and the appellant Jennie Orrill, husband and wife on December 1, 1902, conveyed certain lands which were the separate property of S. H. Orrill and the children of his first marriage and received as consideration therefor $600.00 cash and one (1) vendor's lien note for $400.00, due December 1, 1903, a jury finding that the proceeds of the vendor's lien note were used by S. H. Orrill on December 12, 1903, to buy an undivided one-fourth (¼) interest in certain lands in the absence of any evidence that the proceeds were so used, could not be upheld inasmuch as to do so would be basing one presumption on another presumption." Appellee presents his counter point thereto as follows: "The testimony in the case is sufficient to support the verdict and finding of the jury; that the consideration of five hundred dollars in cash paid by S. H. Orrill to G. F. Orrill and Louis Orrill and the $300.00 cash paid by Mrs. Sustaire by S. H. Orrill was proceeds of the amount received from Lee Rozier as purchase price for the land he bought from S. H. Orrill, said land being the community property of the first marriage."

Special Issue No. 1, which was answered "Yes" by the jury, reads as follows: "Do you find from a preponderance of the evidence in this case that the amount of cash to the extent of $500.00 received by S. H. Orrill in the sale of the property to Lee Rozier as shown by a deed dated December 1, 1902, recorded in Volume Q, Page 115, Deed Records of Franklin County, Texas, and offered in evidence before you, was used in the purchase of the land described in the Deed dated December 1, 1902, from G. F. Orrill and Louis Orrill to S. H. Orrill?"

Special Issue No. 2, which was answered "Yes" by the jury, reads as follows: "Do you find from a preponderance of the evidence in this case that the amount of cash to the extent of $300.00 received by S. H. Orrill in the sale of the property to Lee Rozier was shown by a deed dated December 1, 1902, Recorded in Volume Q, Page 115, Deed Records of Franklin County, Texas, and a note therein described, offered in evidence before you, was used in

the purchase of the land described in the deed dated December 12, 1903, from Mrs. S. T. Sustaire to S. H. Orrill?"

On the 1st day of December, 1902, S. H. Orrill was in possession of 106½ acres of land, which he bought while living with his first wife, the mother of the plaintiffs, and concededly community property of the first marriage, by deed from G. M. Northam and wife to S. H. Orrill dated September 7, 1899. The land bought from Northam before the death of the first wife was sold to Lee Rozier on the 1st day of December, 1902, for a recited consideration of $600 cash and one note for $400 due December 1, 1903. On that same day the one-half of the Z. Orrill lands were purchased by S. H. Orrill from his brother; S. H. Orrill paying therefor the sum of $500 cash. On the 12th day of December, 1903, Mrs. Sustaire, the sister of S. H. Orrill, sold her one-fourth interest to S. H. Orrill for a cash consideration of $300. The date of the Sustaire deed is just 11 days after the $400 vendor's lien note that Rozier gave to S. H. Orrill became due on December 1, 1903. The testimony showed that the 106½ acres of land (community property of S. H. Orrill and his first wife) was all the land that he owned and farmed prior to its sale on December 1, 1902, and that in 1902 and prior to 1902 he worked about 30 acres in cotton and corn; that cotton, the only cash crop, was selling at about 10 cents per pound and that his average yearly yield was about five bales of cotton, which crops he worked with a horse team, with a Kelly turning plow and a Georgia stock. He had a renter on a small part of the land, on a third-and-fourth basis, and received a small amount of rent. The corn rent and all the corn he made was used and was not sold. The testimony further showed that S. H. Orrill was a country blacksmith, doing such work as necessary for the trade in and about the year 1902 and for years prior thereto. There was another blacksmith shop at Mt. Vernon and another one at Winfield, both places being about five or six miles from his shop. There is also testimony that he only had about six patrons at his shop, charged 10 cents for sharpening plows, and other modest fees for horse-shoeing and repair work on farm wagons and implements. Under the testimony his blacksmith business was a very modest one from a financial standpoint and it was evident that he was a man of very modest and limited income. He had six children of his own and one step-child, making seven children, being nine in the family, to live off the modest income he had from the farm and blacksmith shop. The court submitted the case on circumstantial evidence.

■ Art. 4619, V.A.T.C.S. provides in part as follows: "All property acquired by either the husband or wife during marriage, except that which is the separate property of either, shall be deemed the common property of the husband and wife; and all the effects which the husband and wife possess at the time the marriage may be dissolved shall be regarded as common effects or gains, unless the contrary be satisfactorily proved." In Leinneweber v. George, Tex.Civ.App., 95 S.W.2d 478, 480, it is stated: "While the general rule is that under statutory presumption property acquired after marriage is community property, unless the contrary appear from clear and satisfactory evidence, what constitutes 'satisfactory evidence' must be determined in the light of the surrounding facts and circumstances. It has been held in instances where it was improbable that after marriage, and before such purchase, the community income of the spouses was sufficient to make such payment, such facts may be given weight in determining the character of the property involved." In Spencer v. Pettit, Tex.Civ.App., 268 S.W. 779, 783, reversed on other grounds by the Supreme Court in 2 S.W.2d 422, the court in discussing the evidence required to overcome the community property presumption where property is acquired during marriage, states: "Appellants rely on the rule which requires the testimony to be 'reasonably clear and satisfactory,' asserting that, if this rule is applied, the evidence is not sufficient to sustain the finding of the jury. This rule could only require such proof as would carry conviction to an unbiased and unprejudiced mind, and

whether or not the evidence is 'reasonably clear and satisfactory,' is a question for the jury". In Watley v. Shoults, Tex.Civ. App., 137 S.W.2d 149, 150, this court stated: "The land in controversy was conveyed to Gordon during his marriage to Ida, and by virtue of Article 4619, R.C.S. of 1925, Vernon's Ann.Civ.St. art. 4619, gives rise to the presumption that it was community of these two. From the evidence offered by defendants in rebuttal to such presumption it is to be observed that W. L. Sloan agreed to convey 100 acres of land in part payment of the timber when the same was removed; the timber was removed by 1904 or 1905; his widow executed a deed in 1906 conveying exactly 100 acres to Gordon; this deed recites that it was made in substitution of a deed formerly made by her husband. The deed records disclosed no deed from Sloan to Gordon. There is no evidence of any other transaction between Sloan and Gordon. Thirty-odd years have passed and the Sloans, Gordon, and all his wives are dead. The evidence offered in rebuttal to the presumption presented a question of fact. We are not prepared to say that the jury's findings are without support in the evidence."

Although we think the issues in this case are close, we are not prepared to say that the jury's findings in response to special issues No. 1 and No. 2 are without support in the evidence. We have carefully considered all of appellant's points, the authorities cited, and the discussions in appellant's excellent brief, but finding no error in the record, we respectfully overrule appellant's points.

Appellee presents two cross-assignments of error as follows: (1) "The error of the court in refusing to submit to the jury as requested by the plaintiffs special requested issue No. 3 and special requested issue No. 4 submitted together;" and (2) "The error of the court in its refusing to find as requested by Appellee after the verdict was returned that the deed to the 8¾ acres of land conveyed by S. H. Orrill to Rom Talbott was a part of the Daniels Survey; and the jury having found that the Daniels was community property of

the first marriage, as a matter of law the 10 acres conveyed by Talbott to Orrill would take the same character as the 8¾ acres of the Daniels Survey and would, therefore, be community property of the first marriage."

Special issues Nos. 3 and 4, requested by appellees (which were refused by the trial court) are as follows: "Do you find from a preponderance of the evidence that S. H. Orrill and wife, Mrs. J. M. Orrill, in conveying the lands to Rom Talbott on Jan. 4, 1905, did not pay the $125.00 cash recited to have been paid in the deed? (Answer 'They did not pay the $125.00' or 'They did pay the $125.00') Answer ———. If you have answered the above issue 'They did pay the $125.00' then you will answer the following issue, otherwise you need not answer same." "Special Issue No. 4: Do you find from a preponderance of the evidence that S. H. Orrill received as consideration for the lands conveyed by him and his wife, to Rom Talbott, on Jan. 4, 1905, the 8¾ acres out of the Daniels Survey conveyed by Rom Talbott and wife to him on same date? (Answer 'Yes' or 'No.' Answer ———".

The 10-acre deed from Talbott and wife to Orrill and the 8¾ acre deed from Orrill and wife to Talbott, each dated January 4, 1905, each acknowledged before the same notary public, and each reciting a cash consideration of $125, were introduced in evidence. There was no oral evidence offered to the effect that the cash consideration in each deed was not paid as recited by the deeds nor was there any oral evidence offered to the effect that the transaction was a transfer or "swap" of lands. There was no evidence introduced in support of these requested issues other than the two deeds. We think the learned trial judge correctly refused to submit special issues Nos. 3 and 4 and correctly refused to find as requested by appellees' cross-assignment No. 2. We respectfully overrule appellees' cross-assignments of error.

The judgment of the trial court is in all respects affirmed.