Carol Ann Reid **SMITH, Individually and as Personal Representative of the Estate of Theodore R. Reid, Appellant,**

v.

**Sidney E. LANIER, Independent Executor of the Estate of Wylma E. Reid, Appellee.**

No. 03–98–00684–CV.

Court of Appeals of Texas, Austin.

July 29, 1999.

Rehearing Overruled Sept. 10, 1999.

Joseph D. Martinec, Jeffers & Banac, Inc., Austin, for Appellant.

Hugh Lowe, Osborne, Lowe, Helman & Smith, L.L.P., Austin, for Appellee.

Before Justices JONES, KIDD and PATTERSON.

MACK KIDD, Justice.

Appellant Carol Ann Reid Smith, individually and as representative of the estate of her deceased father, Theodore Reid, brings this interlocutory appeal of the probate court's denial of her special appearances and of its injunctive order compelling her to return half of her father's assets from South Carolina and deposit them in the registry of the probate court. Smith presents this Court with four issues on appeal: (1) whether the evidence in the record is sufficient to support the exercise of personal jurisdiction over Smith in her representative capacity; (2) whether the evidence in the record is sufficient to support the exercise of personal jurisdiction over Smith in her individual capacity; (3) whether the probate court abused its discretion in refusing to defer its subject-matter jurisdiction in favor of the South Carolina probate court; and (4) whether the probate court abused its discretion in issuing the temporary injunction. We will affirm.

## BACKGROUND

This cause presents us with the complex problem of competing states' probate jurisdiction over an elderly couple's property. The couple, both in their nineties, died in quick succession; the husband died in South Carolina a mere fifty-two days after his wife died in Texas. Each left their entire estate to a different beneficiary. The husband's will was admitted for probate in South Carolina before the Texas probate court had characterized the couple's property and settled the wife's estate. The matter is further complicated by the fact that Texas is a community property state, where property owned by a married couple is presumed to be part of the community unless it meets certain specific criteria,[1] whereas South Carolina is a common-law state, where property titled in a person's name passes through that person's estate.

Theodore and Wylma Reid married after retirement age and remained married for more than twenty-five years. The two resided in Texas throughout their marriage and owned property valued at more than $2,500,000. Carol Ann Reid Smith, Mr. Reid's only child from a previous marriage, lived in South Carolina during the Reids' marriage. In February 1998, Smith came to Texas to help move Mr. and Mrs. Reid into a retirement home in Austin. During this visit, she attended a meeting with her father and his attorney. At the meeting, she accepted her father's power of attorney and aided in the drafting of his will, which left Smith all of Mr. Reid's property and named Smith as the personal representative of his estate.

Wylma Reid died on June 28, 1998. An application to probate Mrs. Reid's will was filed on July 9, 1998, and her will was admitted for probate in a Travis County probate court on July 29. The will specified that Texas law controlled its disposition. Mrs. Reid left all of her property to the Texas Baptist Children's Home.[2] She named as her independent executor appellee Sidney Lanier. Smith returned to Austin from South Carolina for Mrs. Reid's funeral. While in Austin, Smith began using her father's power of attorney to gather her father's assets. During this investigation into her father's financial affairs, she discovered a number of valuable securities held in a safe-deposit box. Smith went home to South Carolina, but returned two weeks later to move her father to South Carolina and to collect Mr. Reid's assets and transfer them to South Carolina. Over the next weeks, using her

1. *See* Tex. Fam.Code Ann. § 3.003 (West 1998) ("Property possessed by either spouse during or on dissolution of marriage is presumed to be community property. The degree of proof necessary to establish that property is separate property is clear and convincing evidence.").

2. Mrs. Reid's will bequeathed to Mr. Reid some tangible personal property, provided he survived her by ninety days. Because Mr. Reid died within ninety days of Mrs. Reid, this provision of the will lapsed.

father's power of attorney, Smith: took all of Mr. Reid's financial records to South Carolina; removed the securities from the safe-deposit box and closed the account; transferred the securities to a Merrill Lynch account in South Carolina; stored the Reids' automobile in Niederwald, Texas; withdrew $42,000 from the Reids' account at Bank One in Austin and deposited it into two accounts in South Carolina; and established her power of attorney over Mr. Reid's American Express mutual fund account.

Mr. Reid died on August 7, 1998, nineteen days after Smith moved him to South Carolina and placed him in a retirement home. He was ninety-six years old. On September 4, 1998, Mr. Reid's will was admitted for probate in South Carolina, and Smith was named the personal representative of her father's estate. Smith submitted an inventory of Mr. Reid's assets, valued at more than $2,000,000, to the South Carolina probate court pursuant to South Carolina law.[3] In the inventory, Smith claimed that Mr. Reid solely owned all of the property that she had transferred to South Carolina from Texas, including the securities from the safe-deposit box. The only interest in the property of Mrs. Reid reflected on the inventory was a half interest in an automobile valued at $4000.

Meanwhile, Lanier initiated proceedings in Texas to halt the probate process in South Carolina in order to protect the beneficiary of Mrs. Reid's estate. He filed a declaratory judgment action in Travis County requesting that the Texas court determine the characterization, whether community or separate property, of the Reids' assets at the time of Mrs. Reid's death. Lanier also requested and received a temporary restraining order freezing one-half of the assets owned by the Reids and enjoining Smith from any further activity involving this half of the property. At a subsequent temporary injunction hearing, Smith filed a special appearance in her capacities as both an individual and as representative of Mr. Reid's estate objecting to the Texas probate court's personal and subject-matter jurisdiction. The probate court, however, found the necessary jurisdiction and issued the injunction.[4] The injunction required Smith to return half of the assets she had previously transferred to South Carolina and to deposit them into the registry of the Texas probate court until such time as a characterization of the assets could be made. Smith appeals.

## STANDARD OF REVIEW

■ When a defendant challenges a court's exercise of personal jurisdiction through a special appearance, she carries the burden of negating all bases of personal jurisdiction. *See Kawasaki Steel Corp. v. Middleton*, 699 S.W.2d 199, 203 (Tex. 1985); *Siskind v. Villa Found. for Educ., Inc.*, 642 S.W.2d 434, 438 (Tex.1982); *Nikolai v. Strate*, 922 S.W.2d 229, 236 (Tex. App.—Fort Worth 1996, writ denied). When a trial court overrules a special appearance, the defendant should request the court to make findings of fact according to Texas Rule of Civil Procedure 296. *Runnells v. Firestone*, 746 S.W.2d 845, 849 (Tex.App.—Houston [14th Dist.] 1988, writ denied). Absent such findings, we view the trial court's judgment as impliedly

---

**3.** South Carolina Probate Code Section 62–3–706 provides that a personal administrator of an estate shall file "an inventory of property owned by the decedent at the time of his death." This same section requests a listing of any encumbrances that may exist on the property, and provides a section for any property owned jointly with another person. *See* S.C. Prob.Code § 62–3–706.

**4.** Two days after the injunction issued in Texas, Smith filed a declaratory judgment action in a South Carolina court requesting a characterization of the disputed property. The Texas court issued another injunction against Smith to restrain her from participating in the South Carolina case. Smith continued her participation, and obtained a judgment from the South Carolina court in January 1999.

finding all the necessary facts to support its judgment. *Worford v. Stamper,* 801 S.W.2d 108, 109 (Tex.1990). In the instant cause, appellants have made no request for findings of fact and conclusions of law from the trial court, and none were filed. We therefore presume that the trial court made all necessary findings to support its judgment. *See Garner v. Furmanite Australia Pty., Ltd.,* 966 S.W.2d 798, 802 (Tex. App.—Houston [1st Dist.] 1998, writ denied). Where a complete statement of facts appears in the record, however, these implied findings are not conclusive and an appellant may challenge the sufficiency of the evidence. *Roberson v. Robinson,* 768 S.W.2d 280, 281 (Tex.1989). Where such points are raised, the standard of review to be applied is the same as that to be applied in the review of jury findings or a trial court's findings of fact. *Id.*

◼ When *in personam* jurisdiction is challenged, we review all the evidence. *See Nikolai,* 922 S.W.2d at 236; *Hotel Partners v. KPMG Peat Marwick,* 847 S.W.2d 630, 632 (Tex.App.—Dallas 1993, writ denied). We apply a factual sufficiency standard in reviewing the evidence, not a *de novo* review.[5] *See Nikolai,* 922 S.W.2d at 236; *Hotel Partners,* 847 S.W.2d at 632; *NCNB Texas Nat'l Bank v. Anderson,* 812 S.W.2d 441, 443–44 (Tex. App.—San Antonio 1991, no writ). Thus, we may reverse the decision of the trial court only if its ruling is so against the great weight and preponderance of the evidence as to be manifestly erroneous or unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

5. Smith argued that the correct standard of review to be applied is *de novo.* We disagree.

6. The jurisdiction of the Texas probate court began on July 9, 1998, at which time the application for probate was filed. *See* Tex. Prob.Code Ann. § 8(a) (West 1980) ("[W]hen two or more courts have concurrent venue of an estate, the court in which application for

## DISCUSSION

*Personal Jurisdiction over Smith as Representative of the Estate*

◼ Smith's first issue contends the probate court erred in asserting personal jurisdiction over her as a representative of Mr. Reid's estate. She argues that she is a South Carolina resident, the disputed property is similarly located in South Carolina, and that Texas cannot obtain long-arm jurisdiction over her or the estate. *See* Tex. Civ. Prac. & Rem.Code Ann. § 17.041–.045 (West 1997); *see also Schlobohm v. Schapiro,* 784 S.W.2d 355, 356 (Tex.1990) (Two components required for assertion of personal jurisdiction: (1) authorized by Texas long-arm statute; and (2) consistent with federal and state constitutional guarantees of due process). Although Smith challenges in this issue the Texas probate court's *in personam* jurisdiction, we will begin our analysis with an examination of *in rem* jurisdiction, and of the authority of the Travis County probate court upon Lanier's filing of the application for probate.[6]

Statutory probate courts have jurisdiction over all matters relating to the settlement, partition, and distribution of estates of deceased persons. *See* Tex. Prob.Code Ann. § 5A(b) (West Supp.1999). Moreover, a probate court may exercise the pendent and ancillary jurisdiction necessary to promote judicial efficiency and economy. *Id.* § 5A(d).

The central dispute in this cause concerns the characterization of the property, whether separate or community property, owned by Mr. and Mrs. Reid upon Mrs. Reid's death, and which judicial tribunal is charged with making that determination. Smith claims that all property removed to

probate proceedings thereon is first filed shall have and retain jurisdiction of the estate to the exclusion of the other court or courts. *The proceedings shall be deemed commenced by the filing of an application averring facts sufficient to confer venue; and the proceeding first legally commenced shall extend to all of the property of the estate.*") (emphasis added).

South Carolina belonged to her father as separate property. Her argument continues that, as Mr. Reid's separate property, South Carolina properly has subject-matter jurisdiction over the disputed property following Mr. Reid's death. Therefore, Smith argues that because the property removed to South Carolina belonged solely to Mr. Reid, a Texas probate court disposing of Mrs. Reid's estate cannot establish the minimum contacts necessary to obtain *in rem* jurisdiction. She finds support for this proposition in *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977).

In *Shaffer*, the United States Supreme Court answered the question of whether minimum-contacts analysis pursuant to *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) governed *in rem* jurisdictional analysis as it does cases of *in personam* jurisdiction. *See Shaffer*, 433 U.S. at 212, 97 S.Ct. 2569. *Shaffer* involved a shareholder in a Delaware corporation who sought to gain jurisdiction over out-of-state corporate officers in his derivative suit by sequestering in a Delaware state court their shares of stock in the corporation. Delaware law characterized all shares held in a Delaware corporation, regardless of their physical location, to be in Delaware, and thus within the state's *in rem* jurisdiction. Reversing the Delaware Supreme Court's finding of *in rem* jurisdiction, the United States Supreme Court concluded that "all assertions of state-court jurisdiction must be evaluated according to the standards set forth in *International Shoe* and its progeny." *See id.; see also International Shoe*, 326 U.S. at 316, 66 S.Ct. 154 ("[D]ue process requires only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"). The Supreme Court applied the appropriate analysis and found that sufficient contacts

did not exist to exert Delaware jurisdiction over the property.

Appellant relies on *Shaffer* to support her assertion that Texas state jurisdiction over her and the disputed property lacks the requisite minimum contacts. Before engaging in this analysis, however, we note an important difference between *Shaffer* and the instant cause. In *Shaffer*, the Supreme Court found very significant the fact that the property over which the state sought jurisdiction was not the subject matter of the litigation. *See Shaffer*, 433 U.S. at 213, 97 S.Ct. 2569. As the Court noted, "when claims to the property itself are the source of the underlying controversy between the plaintiff and the defendant, it would be unusual for the State where the property is located not to have jurisdiction.... The State's strong interest in assuring the marketability of property within its borders and in providing a procedure for peaceful resolution of disputes about the possession of that property would also support jurisdiction, as would the likelihood that important records and witnesses will be found in the State." *Id.* at 207–08, 97 S.Ct. 2569. Thus, *Shaffer* recognizes the general rule that a state court maintains *in rem* jurisdiction over property located within the state that gives rise to the cause of action. In the instant cause, while it is true that the disputed property now resides in South Carolina, the cause before the Texas probate court involves property held in Texas during the marriage of two Texas residents, property that is subject to probate proceedings following the death in Texas of one of the residents.

 Texas is a community property state. All property possessed by either spouse during or on dissolution of marriage is presumed to be community property. Tex. Fam.Code Ann. § 3.003 (West 1998). The presumption ·which obtains when the marriage is dissolved applies to dissolution by death as well as divorce. *See George v. Reynolds*, 53 S.W.2d 490, 494 (Tex.Civ.App.—Eastland 1932, writ

dism'd). This presumption of community property may be overcome by a spouse asserting separate property by clearly tracing the origin of the property as an asset on hand before marriage. *See Kirtley v. Kirtley,* 417 S.W.2d 847, 853 (Tex. Civ.App.—Texarkana 1967, writ dism'd w.o.j.). Whether the presumption as to the community character of marital property is overcome is a question for the jury. *See Orrill v. Orrill,* 271 S.W.2d 173, 175–76 (Tex.Civ.App.—Texarkana 1954, no writ). The characterization of property clearly lies within the probate court's jurisdiction over all matters relating to the settlement and distribution of a decedent's estate. *See, e.g., Estate of Hanau v. Hanau,* 730 S.W.2d 663 (Tex.1987).

 Smith argues that because her father owned the securities before the marriage, the securities necessarily remain his estate's separate property. We express no present opinion on the character of the disputed property; that question is not before us. However, we note that the decision as to the character of the disputed property is not Smith's to make. Given the community property presumption,[7] Smith must convince a Texas jury that this presumption of community property is overcome. Until such time as the Texas probate court has ruled on the character of the property and determined the extent of the property owned by Mrs. Reid at the time of her death, the property must remain encumbered with the Texas probate court's authority to determine its character. *See Lucik v. Taylor,* 596 S.W.2d 514, 516 (Tex.1980).[8]

Furthermore, applying a minimum-contacts analysis to the disputed property yields the same result—*in rem* jurisdiction. *International Shoe* states that due process requires that the application of jurisdiction must depend "upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure." *International Shoe,* 326 U.S. at 319, 66 S.Ct. 154. The core issue of an inquiry into jurisdiction is the relationship among the property, the forum, and the litigation. *See Shaffer,* 433 U.S. at 204, 97 S.Ct. 2569. The Reids lived in Texas throughout their marriage. Mrs. Reid's will contained a choice of law provision requiring the application of Texas law. The property was located in Texas at the time of Mrs. Reid's death. There was every expectation that her will would be filed and disposed of in a Texas probate court. We hold that the disputed property had the minimum contacts with Texas necessary in accordance with *International Shoe* such that the application of *in rem* jurisdiction by the Texas probate court does not offend traditional notions of fair play and substantial justice.

Smith next cites this Court to *Costello v. State,* 774 S.W.2d 722 (Tex.App.—Corpus Christi 1989, writ denied) for the proposition that a court loses its *in rem* jurisdiction once the *res* has been released or removed from the control of the court's jurisdiction. *See Costello,* 774 S.W.2d at 724. Lanier responds that *Costello* creates an exception for this loss of jurisdiction if the *res* is removed accidentally, fraudulently, or improperly. *See id.* Lanier bolsters

---

7. We also note that cash dividends on separately held stock are community property. *See Bakken v. Bakken,* 503 S.W.2d 315, 317 (Tex.Civ.App.—Dallas 1973, no writ). Thus, to the extent that cash dividends from stock held by Mr. Reid before the marriage were reinvested, at least a fact issue exists as to the characterization of the securities.

8. "[T]he protection from dissipation or transfer of the potential assets of the estate of Lucik directly bears on the ultimate collection and distribution of such properties pursuant

to his effective will.... [U]nder the allegations of the application for preliminary injunctive restraint it was necessary that the assets in question be protected and preserved until their status could be determined. Otherwise, the provisions of the successful will could be frustrated and the enforcement of the jurisdiction of the Probate Court defeated." *Lucik v. Taylor,* 596 S.W.2d 514, 516 (Tex.1980) (citing *English v. Cobb,* 593 S.W.2d 674, 676 (Tex.1979)).

his argument through reliance on the holding in *State v. Approximately $2,000,000 in U.S. Currency,* 822 S.W.2d 721 (Tex. App.—Houston [1st Dist.] 1991, no writ). In *State v. $2,000,000* the court stated: "The general rule of in rem jurisdiction is the court's jurisdiction is dependent upon its control over the res. The release or removal of the res from the control of the court will terminate the court's jurisdiction over the res. However, if the res is released accidentally, fraudulently, or improperly, the court will not be divested of its jurisdiction." *Id.* at 726 (citations omitted).

Both *Costello* and *State v. $2,000,000* involved property forfeiture proceedings resulting from narcotics convictions. The dispute over the court's jurisdiction in both cases grew out of official actions of the court releasing the *res* from its control. In *Costello,* the court ordered the seized property forfeited to the county sheriff, releasing the State's jurisdiction over the property for purposes of appeal. *See Costello,* 774 S.W.2d at 723–24. In *State v. $2,000,000,* the State improperly transferred the seized property to a federal district court, and thus retained jurisdiction over the *res* by virtue of its failure to properly transfer the *res* from its control. *State v. $2,000,000,* 822 S.W.2d at 726–27. In the present situation, the Texas probate court has taken no action to release the *res* from its jurisdiction. To the contrary, the Texas probate court has taken every step to protect its *in rem* jurisdiction over Mrs. Reid's property. We hold the Texas probate court did not lose its *in rem* jurisdiction because Smith unilaterally transferred the property to another state; Texas jurisdiction is not so easily defeated. Neither *Costello* nor *State v. $2,000,000* speak to the situation at hand. Because the Texas probate court never released its control over the *res,* it retained its *in rem* jurisdiction.

Having found that the Texas probate court had *in rem* jurisdiction to determine the character of the Reids' property owned at the time of Mrs. Reid's death, we now examine whether the probate court also had *in personam* jurisdiction over Smith in her capacity as representative of Mr. Reid's estate. The Texas court retains *in rem* jurisdiction over the property irrespective of the manner of its transfer to South Carolina.[9] Because the Texas probate court has *in rem* jurisdiction to the extent of having the authority to characterize the Reids' property at the time of Mrs. Reid's death, the court has jurisdiction over Smith as representative of Mr. Reid's estate. We hold that sufficient evidence exists to support the exercise of personal jurisdiction over Smith in her representative capacity. We overrule Smith's first issue.

### Personal Jurisdiction over Smith as Individual

■ Smith next argues that the evidence in the record is insufficient to establish personal jurisdiction over her as an individual. Smith notes that she is a nonresident of Texas, and thus not subject to its jurisdiction without application of the Texas long-arm statute. *See* Tex. Civ. Prac. & Rem.Code Ann. § 17.041–.045 (West 1997). Additionally, any contacts she made with the state or actions she took within the state occurred while acting under her father's power of attorney, and thus as his agent and not as an individual.

■ A Texas court may exercise jurisdiction over a nonresident if: (1) the Texas long-arm statute authorizes the exercise of jurisdiction; and (2) the exercise of jurisdiction comports with state and federal constitutional guarantees of due process. *See Guardian Royal Exch. Assur., Ltd. v. English China,* 815 S.W.2d 223, 226 (Tex.1991). The Texas long-arm statute

9. Lanier argues that the Texas probate court obtained jurisdiction over Smith in her individual and representative capacities through her allegedly tortious conduct in transferring

Mr. Reid's assets to South Carolina, namely by conversion. Because we find jurisdiction through alternative means, we need not address Lanier's tort arguments.

authorizes the exercise of jurisdiction over non-resident defendants "doing business" in Texas. *See* Tex. Civ. Prac. & Rem.Code Ann. § 17.042 (West 1997). The statute expressly identifies several acts that constitute "doing business" and states that the list is not exhaustive. The "broad language" of the long-arm statute permits an expansive reach, limited only by federal constitutional requirements of due process. *See Schlobohm*, 784 S.W.2d at 357.

■■■■ Under the federal constitutional test of due process, a state may assert personal jurisdiction over a non-resident defendant if: (1) the defendant has purposefully established minimum contacts with the forum state; and (2) the exercise of jurisdiction comports with fair play and substantial justice. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Under the minimum-contacts analysis, we focus on the defendant's intentional activities and expectations in deciding whether it is proper to call her before the forum state's courts. *See World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291–92, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). The minimum-contacts requirement may be satisfied if either specific or general jurisdiction exists. Specific jurisdiction attaches if the cause of action arises out of or relates to the non-resident's contact with the forum state. *Guardian Royal*, 815 S.W.2d at 227. The contact between the defendant and the forum state must have occurred as a result of the defendant's purposeful conduct. *Id.*

■■■■ Smith argues that, other than her trip to Texas in February 1998 to help move the Reids into a retirement home, every other action she took within the state occurred under her father's power of attorney as his attorney in fact. The appointment of an attorney in fact creates an agency relationship. *Sassen v. Tanglegrove Townhouse Condominium Assoc.*, 877 S.W.2d 489, 492 (Tex.App.—Texarkana 1994, writ denied). An agency creates a fiduciary relationship as a matter of law.

*Id.* Smith, acting as attorney in fact, conducted several transactions with various Texas residents and institutions involving the property disputed in this cause: she participated in the drafting of her father's will naming her as representative of the estate and sole beneficiary; she collected and removed to South Carolina all of her father's financial records; she removed all property from the safe-deposit box and closed the account; she withdrew all the cash from the Reids' account at Bank One in Austin and opened two accounts in South Carolina; and she transferred all of the securities that form the majority of the dispute from Texas to a new account in South Carolina.

We note that Mr. Reid was himself under certain obligations after Mrs. Reid died. After her death, Mr. Reid acted as a trustee over the community until such time as a qualified administrator (Lanier) was appointed. *See* Tex. Prob.Code Ann. § 160 (West 1980) (survivor is to marshal and take control and *preserve the community property* ); *Grebe v. First State Bank of Bishop*, 136 Tex. 226, 150 S.W.2d 64, 66–7 (1941) (survivor has authority to manage and dispose of community property for paying of community debts, but not entitled to use funds or community assets for private use; holds same in trust for benefit of true owners thereof). Moreover, Smith was intimately involved with the planning of Mr. Reid's estate and the drafting of his will. She was either personally aware, or should have been aware under her fiduciary responsibility as attorney in fact, of the applicable community property laws in Texas.

■■ Smith argues that her status as agent shields her from the personal jurisdiction of the Texas probate court. We disagree. Smith confuses the nature of jurisdiction with that of liability. Agency is an affirmative defense to personal liability. *See Seale v. Nichols*, 505 S.W.2d 251, 254 (Tex.1974). An agency relationship does not shield an individual from jurisdic-

tional contacts with a state, only from possible liability flowing from the activities conducted within the forum state. *See Zac Smith & Co. v. Otis Elevator Co.,* 734 S.W.2d 662, 666 (Tex.1987). As attorney in fact, Smith took advantage of the laws of the State of Texas to exercise control over her father's assets. She purposefully directed her activities toward numerous Texas residents and institutions, activities that resulted in the removal from the state of the property that is the basis of the dispute. Furthermore, she was on notice that the property might be subject to the jurisdiction of the Texas probate court. Under these circumstances, the assertion of personal jurisdiction over Smith does not offend traditional notions of fair play and substantial justice. We therefore find that sufficient evidence exists in the record to support the exercise of personal jurisdiction over Smith in her individual capacity, and overrule her second issue.

### *Subject–Matter Jurisdiction*

Smith's next issue contends that the Texas probate court either lacked subject-matter jurisdiction or, alternatively, should have deferred subject-matter jurisdiction to the South Carolina probate court. She argues that Mr. Reid's property, once removed to South Carolina, was physically within the *in rem* jurisdiction of the South Carolina courts prior to the filing of the application of Mrs. Reid's will for probate. Therefore, she contends the disputed property formally became *in custodia legis* of the Richland County Probate Court of South Carolina upon Mr. Reid's death. And, because these assets were arguably Mr. Reid's separate property or "sole management" community property, and thus within his power to transfer, the Texas probate court administering Mrs. Reid's will did not have subject-matter jurisdiction over the disputed property. *See* Tex. Prob.Code Ann. § 177(b) (West 1980) ("The surviving spouse, as surviving partner of the marital partnership, is entitled to retain possession and control of all community property which was legally under

the sole management of the surviving spouse during the continuance of the marriage and to exercise over that property all the powers elsewhere in this part of this Code authorized to be exercised by the surviving spouse when there is no administration pending on the estate of the deceased spouse."). Alternatively, Smith argues that the Texas probate court abused its discretion in not deferring subject-matter jurisdiction to the South Carolina probate court in the interests of comity.

We make no judgment as to the legitimacy of the process by which Smith, acting under her father's power of attorney, transferred all of his assets to South Carolina. Thus, we assume without deciding that the transfer of this property occurred legally. But, as we have already stated, the property remained burdened with the Texas probate court's jurisdiction to determine its character, irrespective of the physical transfer of the property. To hold otherwise would allow probate jurisdiction to be too easily defeated. Smith's argument that the disputed property was separate property or "sole management" community property, and thus hers to dispose of as she pleased, puts the cart before the horse. The potential beneficiary of disputed property is not the proper arbiter of its characterization. The Texas probate court was charged with that duty.

Moreover, the Texas probate court's jurisdiction over Mrs. Reid's will formally began on July 9, 1998, prior to Mr. Reid's death. Thus, the South Carolina probate court's application of jurisdiction over the disputed property was encumbered by the previous exercise of the Texas probate court's subject-matter jurisdiction. Under Texas law, if two lawsuits pending in courts of coordinate jurisdiction concern the same subject matter and parties, the first court to acquire jurisdiction has the dominant jurisdiction. *See Curtis v. Gibbs,* 511 S.W.2d 263, 267 (Tex.1974). The Texas probate court acquired subject-matter jurisdiction both impliedly and for-

mally before Mr. Reid's death and before the application for probate of his will was filed in the South Carolina court. Thus, the Texas court retained dominant jurisdiction.

■■■■ Smith next argues that the Texas probate court should defer its subject-matter jurisdiction in favor of the South Carolina court on the basis of comity due to the physical location of the property within the South Carolina court's *in rem* jurisdiction. "Comity" is a principle under which the courts of one state give effect to the laws of another state or extend immunity to a sister sovereign not as a rule of law, but rather out of deference or respect. *Hawsey v. Louisiana Dep't of Social Servs.*, 934 S.W.2d 723, 726 (Tex. App.—Houston [1st Dist.] 1996, writ denied). We review the trial court's failure to defer its subject-matter jurisdiction on the basis of comity under an abuse of discretion standard. *See InterFirst Bank–Houston v. Quintana Petroleum*, 699 S.W.2d 864, 877 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.). A trial court abuses its discretion only when it acts in an unreasonable and arbitrary manner, or when it acts without reference to any guiding principles. *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex.1991); *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985). This Court may not reverse for abuse of discretion merely because we disagree with a decision of the trial court. *Buller*, 806 S.W.2d at 226; *Downer*, 701 S.W.2d at 242.

We have reviewed at some length the obligation of the Texas probate court upon the application for probate of Mrs. Reid's will to characterize the property according to Texas law. We have stated that the Texas court acquired both implied and formal subject-matter jurisdiction over the Reids' property to discharge this obli-

gation before the South Carolina probate court's jurisdiction was activated by Smith. We have likewise examined the personal jurisdiction over Reid and found it supported by the evidence. Under these circumstances, we cannot say that the Texas probate court abused its discretion in failing to defer its subject-matter jurisdiction in favor of the South Carolina court.[10]

### The Injunction

■■ In her final issue presented, Smith argues that the probate court abused its discretion in issuing the injunction requiring Smith to deposit one-half of the Reids' assets into the registry of the court pending characterization by the court. She specifically contends that, since the court erred in exercising personal jurisdiction over her in her individual and representative capacities, and since the court erred in exercising subject-matter jurisdiction in violation of the general rules of comity, the issuance of the injunction was in error.

■■■ A court has the inherent power to order the surrender of property held by any party to the suit. *Ex parte Preston*, 162 Tex. 379, 347 S.W.2d 938, 941 (Tex. 1961). This inherent power enables the court to preserve its own ability to render effective relief and give effect to its judgment. *Vannerson v. Vannerson*, 857 S.W.2d 659, 674 (Tex.App.—Houston [1st Dist.] 1993, writ denied) (trial court may issue injunction to temporarily safeguard community property from encumbrance or transfer pending a final division). Because we have concluded that the exercise of personal jurisdiction is supported by sufficient evidence and the cause is governed by the subject-matter jurisdiction of the Texas probate court, that court did not abuse its discretion in issuing the injunction to maintain the status quo pending a characterization of the Reids' assets at the

---

10. Recognizing that a characterization of the Reids' property under community property principles could yield Mrs. Reid's estate, at most, one-half of the couple's assets, the Texas probate court's injunction required the deposit of only half of the transferred property into the court's registry. Thus, the Texas probate court did yield control over the remainder of Mr. Reid's estate to the South Carolina court's jurisdiction.

time of Mrs. Reid's death. Consequently, we overrule Smith's final issue.

## CONCLUSION

Sufficient evidence exists in the record to support the Texas probate court's assertion of personal jurisdiction over Smith individually and as representative of her father's estate. The Texas probate court had subject-matter jurisdiction and did not abuse its discretion in failing to defer its jurisdiction in favor of South Carolina in accordance with comity. Finally, the probate court did not abuse its discretion in issuing the temporary injunction. Accordingly, we affirm the judgment of the probate court.