NO.
12-06-00147-CV

 

IN THE COURT OF APPEALS 

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

KAREN GRANGER,            §                      APPEAL FROM THE 159TH

APPELLANT

 

V.        

§                      JUDICIAL
DISTRICT COURT

HELEN GRANGER, ELIJAH
GRANGER,

CHESTER BENJAMIN, SARAH
REED,

JOSEPH BENJAMIN, SUSIE
WILLIAMS

AND TONY GRANGER,

APPELLEES §                      ANGELINA
COUNTY, TEXAS

                                                                                                                                                           


OPINION

            Appellant
Karen Granger appeals the trial court’s judgment denying her claim to one-half
of a life insurance policy purchased by her deceased husband.  In three issues, Karen argues that the
beneficiaries of her husband’s life insurance policy failed to prove by clear
and convincing evidence that the policy was his separate property and that, if
the policy was community property, the gift of the proceeds was a fraud on the
community estate, entitling her to an appropriate remedy.

 

Background

            Karen
and Danny Granger were married on May 24, 1999 and had two children during the
marriage.  In 2003, Danny purchased two
life insurance policies, one from Monumental Life Insurance Company in the
amount of $150,000.00 and the other from Old Line Life Insurance Company of
America in the amount of $100,000.00. 
Danny named his mother, Helen Granger, and his brother, Elijah Granger,
as beneficiaries of the Monumental policy. 
He named his mother, four brothers, and two sisters as beneficiaries of
the Old Line policy.  Danny paid the
premiums for both policies through automatic drafts from his Regions Bank account.  The first Monumental policy premium was
drafted on March 4, 2003 in the amount of $15.00 and the first Old Line policy
premium was drafted in May of 2003. 
Danny died on October 27, 2003. 
After his death, Monumental distributed the proceeds of its policy to
Helen Granger and Elijah Granger.

            On
March 22, 2004, Old Line filed suit, seeking to deposit funds in the court’s
registry to resolve conflicting claims to the proceeds of its insurance
policy.  Karen, Helen, and Danny’s four
brothers and two sisters were named defendants. 
Karen filed a cross action against Danny’s mother, four brothers, and
two sisters, claiming that Danny’s gifts of her one-half community interest in
the policies constituted fraud on her and on the community estate.  The trial court ordered that Old Line’s
policy proceeds be deposited into the registry of the court.  After a bench trial, the trial court found
that Danny had community funds in his possession when he purchased the Old Line
policy and that one-half of the policy was Karen’s community property.  However, the trial court found that Danny
used separate property funds to purchase the Monumental policy and, thus, the
policy was Danny’s separate property. 
The trial court ordered that Karen recover one-half of the proceeds of
the Old Line policy, but that she take nothing on her claims regarding the
Monumental policy.  The trial court also
ordered that Danny’s mother, four brothers, and two sisters recover the other
one-half of the proceeds of the Old Line policy.  

            In
its findings of fact and conclusions of law, the trial court stated as follows:

 

1.             Danny
and Karen were married on May 24, 1999, and ceased to live together as husband
and wife approximately one year before his death as a result of an auto
accident on or about October 27, 2003, in Lufkin, Angelina County, Texas.

 

2.             Danny
was totally disabled as determined by the Social Security Administration as of
June 22, 2000, and was awarded Supplemental Security Income (“SSI”) which
was paid monthly to him with payments being made to Sarah Reed for Danny
beginning July 1, 2000.

 

3.             Danny
received $457.00 in SSI payments for each month during the year of 2003,
through the month of his death in October 2003. The SSI payments paid to Danny
because of his total disability was received by his sister, Sarah Reed, and
thereafter paid over to Danny in cash payments.

 

4.             Danny
purchased a life insurance policy through Regions Bank accidental death
insurance plan with an effective date of March 1, 2003, issued by Monumental
providing for $150,000.00 for accidental death benefits.

5.             Danny
paid the monthly premiums to Monumental by a bank draft through Regions Bank in
the amount of $15.00 per month with the first premium being paid on March 4,
2003. 

 

6.             Danny
possessed no monies other than monies received by him through his SSI payments
and gifts from family members at the time of the purchase of the life insurance
policy on his life through Monumental.

 

7.             Those
funds on deposit on March 4, 2003, in Danny’s account with Regions Bank was the
separate property of Danny.

 

8.             Danny
had no community property monies at the time of the purchase of the life
insurance policy on his life with Monumental.

 

9.             Danny
designated his mother, Helen Granger, and his brother, Elijah Granger, as
beneficiaries in equal shares of the life insurance proceeds to be paid under
the policy issued by Monumental.

 

10.          After
Danny had purchased life insurance from Monumental on his life, he received a
check from Willie Spikes, Jr., in the amount of $315.00 dated March 12, 2003,
which was presumed to be community property of Danny and Karen.

 

11.          Danny
purchased a life insurance policy issued on his life by Old Line effective May
3, 2003, after Danny had in his possession those  funds paid to him by Willie Spikes, Jr. in
the amount of $315.00.

 

12.          The
cross-defendants proved that the life insurance policy issued by Monumental on
the life of Danny was the separate property of Danny by rebutting the
presumption that the same was community property by clear and convincing
evidence. 

 

13.          At the
time of inception of title by Danny of the Monumental policy[,] the policy was
characterized as separate property because it was acquired by the use of
separate property funds.

 

14.          Cross-defendants
failed to rebut the presumption that the life insurance policy purchased by
Danny from Old Line during his marriage to Karen was not the community property
of Danny and Karen.

 

This appeal followed.

 

Separate
Property

            In
her first issue, Karen argues that the beneficiaries of her husband’s
Monumental life insurance policy failed to prove by clear and convincing
evidence that the policy was his separate property.

Standard of Review

            We
review a trial court’s division of property under an abuse of discretion standard.  Moroch v. Collins, 174 S.W.3d
849, 857 (Tex. App.–Dallas 2005, pet. denied); see also Garza v.
Garza, 217 S.W.3d 538, 548 (Tex. App.–San Antonio 2006, no pet.).  A trial court does not abuse its discretion
if there is some evidence of a substantive and probative character to support
the decision.  Garza, 217
S.W.3d at 549; Moroch, 174 S.W.3d at 857.  A trial court’s findings of fact are reviewed
for legal and factual sufficiency of the evidence under the same legal
standards applied to review jury verdicts for legal and factual sufficiency of
the evidence.  Ortiz v. Jones,
917 S.W.2d 770, 772 (Tex. 1996); M.D. Anderson v. City of Seven Points,
806 S.W.2d 791, 794 (Tex. 1991). 

            However,
in family law cases, the abuse of discretion standard of review overlaps with
the traditional sufficiency standards of review and, as a result, legal and
factual sufficiency are not independent grounds of reversible error. Garza,
217 S.W.3d at 549; Moroch, 174 S.W.3d at 857.  Instead, they constitute factors relevant to
our assessment of whether the trial court abused its discretion.  Garza, 217 S.W.3d at 549; Moroch,
174 S.W.3d at 857.  Thus, in considering
whether the trial court abused its discretion because the evidence is legally
or factually insufficient, we apply a two prong test: (1) did the trial court
have sufficient evidence upon which to exercise its discretion, and (2) did the
trial court err in its application of that discretion?  Garza, 217 S.W.3d at 549; Moroch,
174 S.W.3d at 857.  We then consider whether,
based on the evidence, the trial court made a reasonable decision.  Garza, 217 S.W.3d at 549; Moroch,
174 S.W.3d at 857. 

            We
review the trial court’s conclusions of law de novo.  Material P’ships, Inc. v. Ventura,
102 S.W.3d 252, 257 (Tex. App.–Houston [14th Dist.] 2003, pet. denied).  The standard of review for conclusions of law
is whether they are correct.  Id.  We will uphold conclusions of law on appeal
if the judgment can be sustained on any legal theory the evidence supports.  Id. 
Thus, incorrect conclusions of law do not require reversal if the
controlling findings of fact support the judgment under a correct legal
theory.  Id.

Applicable Law

            Property
possessed by either spouse during or on dissolution of marriage is presumed to
be community property. Tex. Fam. Code
Ann. § 3.003(a) (Vernon 2006).  To
overcome this presumption, a party must present clear and convincing evidence
that the property is separate.  Id.,
§ 3.003(b); Garza, 217 S.W.3d at 548.  “Clear and convincing evidence” means the
measure or degree of proof that will produce in the mind of the trier of fact a
firm belief or conviction as to the truth of the allegations sought to be
established.  Tex. Fam. Code Ann. § 101.007 (Vernon 2002).  In order to overcome the community property
presumption, the burden is on the spouse claiming certain property as separate
to trace and clearly identify the property claimed to be separate.  Boyd v. Boyd, 131 S.W.3d 605,
612 (Tex. App.–Fort Worth 2004, no pet.). 
A spouse’s separate property consists of the property owned or claimed
by the spouse before marriage, the property acquired by the spouse during
marriage by gift, devise, or descent, and the recovery for personal injuries
sustained by the spouse during marriage, except any recovery for loss of
earning capacity during marriage.  Tex. Fam. Code Ann. § 3.001 (Vernon
2006).

            Tracing
involves establishing the separate origin of the property through evidence
showing the time and means by which the spouse originally obtained possession of
the property.  Boyd, 131
S.W.3d at 612.  As a general rule, mere
testimony that property was purchased with separate funds, without any tracing
of the funds, is insufficient to rebut the community property presumption.  Garza, 217 S.W.3d at 548; Moroch,
174 S.W.3d at 855.  Any doubt as to the
character of property should be resolved in favor of the community estate.  Garza, 217 S.W.3d at 548; Moroch,
174 S.W.3d at 856.  The presumption that
obtains when the marriage is dissolved applies to dissolution by death as well
as divorce.  Smith v. Lanier,
998 S.W.2d 324, 331 (Tex. App.–Austin 1999, pet. denied).  Social security benefits are not subject to
division under community property laws because the language in 42 U.S.C.A.,
section 407 of the Social Security Act manifests a congressional intent to
preempt state law.  Richard v.
Richard, 659 S.W.2d 746, 747-49 (Tex. App.–Tyler 1983, no writ) (citing
In re Marriage of Kelley, 64 Cal. App. 3d 82, 98, 132 Cal. Rptr.
259, 268 (1976)).  The provisions of
section 407 of the Social Security Act apply to Supplemental Security Income
benefits to the same extent pursuant to section 1383(d)(1) of the Social
Security Act.  See Social Security
Act, 42 U.S.C.A. § 1383(d)(1) (West, Westlaw through Feb. 2006).

Analysis

            At
trial, Karen testified that she and Danny were separated about one year before
his death on October 27, 2003.  When they
married, Danny worked at the Atkinson Candy Kitchen and did carpentry work in
the evenings and on weekends.  About a
year after they were married, Danny quit working at the Candy Kitchen and began
receiving SSI, but continued to work as a carpenter.  Karen agreed that Danny’s SSI check went to
his sister, Sarah Reed, on the first of every month.  Karen stated that, most of the time, Danny paid
his child support when he received the check. 
She denied that Danny relied upon his family for support or that he was
living with his mother when he died. 
Other than the $315.00 check from Willie Spikes, Jr., Karen had no other
documentation regarding any monies that Danny earned in the year after they
separated. Karen admitted that Danny borrowed money from her at times after
they separated.  Although Karen stated
that she saw people pay Danny money for carpentry work, she admitted that this
occurred before their separation.  She
acknowledged that she did not have access to Danny’s bank accounts. 

            Willie
Spikes, Jr. testified that, in March of 2003, he hired Danny to remodel his
residence.  As payment for the work,
Spikes wrote a check to Danny in the amount of $315.00 on March 12, 2003.  Danny’s bank records show that he deposited
$200.00 of this check into his Bank of America account on March 13, 2003.  This check was deposited after Regions Bank
drafted the Monumental premium on March 4, 2003.  Spikes also testified that while Danny worked
for him, people would frequently approach Danny asking him to perform carpentry
jobs for them.  Two other witnesses
testified that Danny performed carpentry work for them, but admitted that he
did the work about two months before his death on October 27, 2003.  

            Sarah
Reed, Danny’s sister, testified that she helped him obtain SSI benefits because
he suffered from schizophrenia.  Sarah
stated that Danny received a check each month for SSI benefits in the year
before his death, but that she handled his funds. Sarah stated that when she
received Danny’s SSI check, she either deposited it into her account or cashed
the check.  Because she advanced Danny
monies “all of the time,” she would deduct the amount advanced from his SSI
check and give him the rest of it.  She
denied that Danny was able to perform carpentry work in the year before he
died. At that time, she stated that any work Danny might have done would have
been minimal because he was very sick. 
Sarah had no knowledge of any work that Danny performed from November
2000 to the date of Spikes’s check which would have gained him any income.  As far as she knew, Danny had no other funds
from which to purchase life insurance besides his SSI check. 

            Sarah
stated that Danny lived with their mother and did not pay rent.  Nor did he have the money to help pay for his
mother’s utilities.  She testified that
her mother and all of their siblings gave Danny money because he was always “broke.”  To her knowledge, Danny spent most of the
last year of his life at  home and did
not work for any extended period of time. 
She stated that Danny paid Karen child support after their separation
and, to the best of her knowledge, it was paid from his SSI benefits.

            Elijah
Granger,  Danny’s brother, testified that
he lived next door to his mother and Danny. He agreed that Danny suffered from
schizophrenia and had long periods of depression.  Other than the time Danny worked for Spikes,
Elijah was not aware of any time that Danny had any kind of employment for
Spikes or anyone else during the last months of his life.  Because he lived next door to his mother and
Danny, Elijah saw Danny daily.  Elijah
stated that most of the time Danny would be sitting in his “studio,” playing
his guitar.  He was not aware that Danny
performed any work for Spikes, although he stated that Danny did practice his
guitar with Spikes, who was also a musician. 
The only money he knew Danny had during the last year of his life that
would have allowed him to purchase life insurance was his SSI check.  Almost every time Elijah saw Danny, he was “broke”
and needed money.  If Danny needed help,
such as gas money or money to go to the store, he provided it.  Suzie Anna Williams, Danny’s sister,
testified that Danny was always “broke.” 
She was not aware that he worked regularly during the last year of his
life.  Other than his SSI check, Suzie
did not believe Danny had any funds to pay for insurance premiums. 

            Regarding
Danny’s Regions Bank account, the evidence showed that he had no deposits over
$200.00 for the months from April of 2002 through November of 2002.  During these months, his account was
frequently overdrawn.  When he deposited
$500.00 in December of 2003, his account had a balance of $1.98.  At the beginning of January, the account had
a balance of $0.97.  He deposited  $20.00 on February 4, 2003, leaving a balance
of $15.97.  In February, Danny made two
other deposits totaling $170.00.  At the
time the Monumental premium was drafted on March 4, 2003, the account had
a balance of $52.04.  At the same time,
the balance in his  bank account with
Bank of America was $18.92.  At the end
of December 2002, his Bank of America account had a $20.42 balance, although he
deposited $500.00 on December 4, 2002. 
Danny’s Bank of America account was overdrawn for almost the entire
month of January 2003, and he made only three deposits totaling $50.00 from
January 2003 until March 12, 2003.  The
evidence also shows that Sarah gave Danny a check in the amount of $452.00 on January
30, 2003 and that Danny paid Karen $500.00 on February 28, 2003.  None of Sarah’s deposit slips from January
through March 2003 match the amount of Danny’s SSI check.

            Because
the Monumental policy was purchased during the marriage, the policy is presumed
to be community property.  See Tex. Fam. Code Ann. § 3.003(a).  However, Danny’s relatives with knowledge of
his financial matters testified that he had no income from approximately
October 2002 to March 4, 2003 other than his SSI benefits or their gifts to
him, both of which were his separate property. 
See Tex. Fam. Code Ann. §
3.001; Richard, 659 S.W.2d at 747-49.  Further, they denied that he worked as a
carpenter regularly during the last year of his life and said he was usually “broke.”  Although Karen disputed their testimony, we
note that, in a bench trial, the trial court, as fact finder, is the sole judge
of the credibility of the witnesses.  Southwestern
Bell Media, Inc. v. Lyles, 825 S.W.2d 488, 493 (Tex. App.–Houston [1st
Dist.] 1992, writ denied).  As fact
finder, the court may take into consideration all of the facts and surrounding
circumstances in connection with the testimony of each witness and accept or
reject all or any part of that testimony. 
Id.  The trial court
could have believed Elijah and Sarah, relatives who lived close to Danny during
the last year of his life, and disbelieved Karen from whom he had been
separated.

            The
only documented community property income Danny received was earned after he
purchased the Monumental policy.  His
Regions Bank account had only a nominal balance at the beginning of January
2003 and the deposits in January and February of 2003 were never documented as
being anything other than SSI benefits or gifts from his family.  Although Sarah’s account did not show that
she deposited Danny’s SSI check in February or March of 2003, she could have
given him cash from those checks as reflected by her testimony.  Further, Danny’s Bank of America account was
either overdrawn or showed little activity between January and March 4,
2003.  Because Danny’s relatives
testified that he did not have any income other than SSI and gifts from family
from approximately October 2002 to March 4, 2003 and his bank records did not
document any such income, there was sufficient evidence to rebut the community
property presumption and the trial court did not abuse its discretion in
finding the Monumental policy to be Danny’s separate property.  See Garza, 217 S.W.3d at 548-49; Moroch,
174 S.W.3d at 855-57.  Accordingly, we
overrule Karen’s first issue.  Because
our holding on Karen’s first issue is dispositive, we need not consider her
remaining issues.

 

 

 

Disposition

            The
judgment of the trial court is affirmed.

 

 

                                                                                                    SAM GRIFFITH   

                                                                                                               Justice

 

 

 

 

Opinion
delivered September 26, 2007.

Panel
consisted of Worthen, C.J., Griffith, J., and Hoyle, J.

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

(PUBLISH)