Barbara **BRITTINGHAM–SADA DE POWERS,** Guillermo Marroquin–Brittingham, Mauricio Marroquin–Brittingham, Juan Carlos Lobeira–Brittingham, Daniela Lobeira–Brittingham, and Brandon Milmo–Brittingham, Appellants,

v.

**THE ANCILLARY ESTATE OF Juan Roberto BRITTINGHAM–MCLEAN, Deceased, Appellee.**

No. 04–01–00389–CV.

Court of Appeals of Texas, San Antonio.

Nov. 17, 2004.

Rehearing Overruled Jan. 14, 2005.

---

W. Wendell Hall, Brynley James, III, Lara Grant, Rosemarie Kanusky, Fulbright & Jaworski L.L.P., San Antonio, C.M. Zaffirini, Zaffirini & Castillo, Laredo, for appellants.

Homero G. Martinez, Homero G. Martinez, P.L.L.C., Alberto Alarcon, Guillermo G. Alarcon, Hall, Quintanilla & Alarcon, L.L.C., Jesus M. Dominguez, Law Office of Jesus M. Dominguez, Bruce J. Werstak, III, Sames & Werstak, L.L.P., Laredo, for appellee.

Sitting: ALMA L. LÓPEZ, Chief Justice, SANDEE BRYAN MARION, Justice, PHYLIS J. SPEEDLIN, Justice.

## OPINION

Opinion by SANDEE BRYAN MARION, Justice.

The underlying probate suit involves the assets of a Mexican decedent, and a dispute between his surviving spouse and some of his children and grandchildren. This is an appeal from the trial court's denial of the special appearances filed by one of his daughters and some of the grandchildren. Because we conclude the trial court's exercise of personal jurisdiction over Barbara Brittingham–Sada de Powers, Guillermo Marroquin–Brittingham, Mauricio Marroquin–Brittingham, Juan Carlos Lobeira–Brittingham, Daniela Lobeira–Brittingham, and Brandon Milmo–Brittingham does not comport with traditional notions of fair play and substantial justice, we reverse the trial court's order as to those appellants and render a dismissal in their favor. We affirm the trial court's order denying the special appearances as to all other appellants.

## BACKGROUND

Juan Roberto Brittingham–McLean, a resident of Mexico, died in Mexico on January 14, 1998. The two executors named in Mr. Brittingham's will, Harold Turk and Raul Hernandez–Garcia, submitted the will for probate in Mexico on January 28, 1998. The executors then withdrew funds in the approximate amount of $27,000 deposited in a Laredo, Texas, bank account and distributed the funds to Mr. Brittingham's children and grandchildren (hereinafter "the heirs") pursuant to Mr. Brittingham's instructions. Mr. Brittingham had also funded two foreign companies, Sandfern (an Irish company) and Jubrico (a British Virgin Islands company), but he owned no

record interest in those companies at the time of his death. However, Turk and Hernandez, as sole shareholders of Sandfern and Jubrico, distributed the assets held by those companies to the heirs in accordance with prior instructions from Mr. Brittingham. Apparently, by the end of March 1998, neither the estate nor the two foreign companies held any assets in Texas.

In March 1998, both Turk and Hernandez resigned as executors. After Turk and Hernandez made their distributions and resigned as executors, both appellee, John R. Brittingham Aguirre ("Aguirre"), and one of the appellants, Barbara Brittingham–Sada de Powers ("Barbara"), filed multi-million dollar claims against the estate in Mexico based on loans each allegedly made to Mr. Brittingham.

In February 1999, Mr. Brittingham's widow, Ana Maria Brittingham ("Ana Maria") sued Mr. Brittingham's estate in Mexico, seeking to set aside her marital agreement with Mr. Brittingham and asserting a community property claim to assets of Mr. Brittingham's estate. The Mexican court denied her claim. The Mexican probate proceeding is still pending.

In August 2000, Ana Maria filed an application for ancillary probate of Mr. Brittingham's will in Webb County, Texas. The Texas probate court admitted the will to probate and issued ancillary letters testamentary naming Ana Maria as executrix and requiring her to file a bond. Thereafter, Ana Maria filed suit against her stepdaughter Maria Cristina Brittingham–Sada de Ayala ("Ayala") and appellants, claiming, among other things, that they illegally withdrew $60–70,000,000 from the assets of the estate without first paying the legitimate debts of the estate. One such debt is a claim asserted by Aguirre. Aguirre intervened in the Texas probate action, tendering his claim against the estate for approximately $11,000,000 based on a 1994 loan he made to Mr. Brittingham.

Ayala moved to dismiss the entire ancillary probate proceeding for lack of subject-matter jurisdiction and, in the alternative, to remove Ana Maria as executrix of the estate. The trial court denied both motions and confirmed Ana Maria as executrix. Ayala appealed, and this court held that the trial court had subject-matter jurisdiction, but reversed the trial court's order appointing Ana Maria as executrix. *See Ayala v. Brittingham*, 131 S.W.3d 3, 8–10 (Tex.App.-San Antonio, July 2, 2003, pet. filed).

Several of the heirs filed special appearances, all of which were denied and are the subject of this appeal. Nine of the heirs filed notices of appeal, but three have since conceded personal jurisdiction.[1] Therefore, this appeal concerns only the special appearances filed by the following heirs: Barbara, Guillermo Marroquin–Brittingham, Mauricio Marroquin–Brittingham, Juan Carlos Lobeira–Brittingham, Daniela Lobeira–Brittingham, and Brandon Milmo–Brittingham.

## WAIVER OF SPECIAL APPEARANCE

■ As an initial matter, we address appellees' argument that Barbara waived her special appearance because she entered a general appearance at a January 16, 2001 hearing by seeking the trial court's judgment on such matters as quashing service, requesting a continu-

---

1. The three are: Angel Eduardo Marroquin–Brittingham, Maria Cristina Lobeira–Brittingham, and Daniel Milmo–Brittingham.

ance, and asking the court not to enter a default judgment.

At the conclusion of the January 16th hearing on Ayala's motion to dismiss for lack of subject-matter jurisdiction, Ana Maria's counsel stated he had one more matter for the court to consider: a default judgment against Barbara. Ana Maria's counsel asserted Barbara had been served, but had not answered. The court said it would sign a judgment against Barbara. Ayala's counsel, Mr. Zaffirini, stated it was his understanding that Barbara had not been served and that when she was served, she would file a special appearance. Mr. Zaffirini admitted he had not been retained to represent Barbara, but he asked to see the document that showed service upon her. When presented with a copy of service, Mr. Zaffirini argued it was void on its face. Mr. Zaffirini repeatedly stated Barbara would file a special appearance once she was served. He finally entered a "special appearance for her verbally." Over Ana Maria's objections and renewed requests that the court render the default judgment, Mr. Zaffirini continued to insist Barbara's answer was subject to her special appearance. At the conclusion of the hearing, the trial court did not rule on the motion for default judgment. The next day, Mr. Zaffirini filed a written special appearance on Barbara's behalf. In its subsequent findings of fact and conclusions of law, the court found that Barbara "entered a general appearance at the hearing on January 16, 2001, by affirmatively requesting the Court not to enter a default judgment against her before she filed any special appearance."

■■■■ A party enters a general appearance whenever it invokes the judgment of the court on any question other than the court's jurisdiction. *See Dawson–Austin v. Austin*, 968 S.W.2d 319, 322 (Tex.1998). If a defendant's act recognizes that an action is properly pending or seeks affirmative action from the court, that is a general appearance. *Id.* The emphasis is on affirmative action that impliedly recognizes the court's jurisdiction over the parties. *Carone v. Retamco Operating, Inc.*, 138 S.W.3d 1, 8 (Tex.App.-San Antonio 2004, pet. denied). Here, Mr. Zaffirini's contention that Barbara had not been served, but that she would file an answer and special appearance if served, was not inconsistent with his contention that the court had no jurisdiction over Barbara. *See id.* at 9. Based on this record, we conclude Barbara did not waive her special appearance.

### STANDARD OF REVIEW

■■■■ A plaintiff bears the initial burden of pleading sufficient allegations to bring a non-resident defendant within the provisions of the Texas long-arm statute. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 793 (Tex.2002). On appeal, we review de novo the trial court's determination to grant or deny a special appearance. *American Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex.2002); *BMC Software*, 83 S.W.3d at 794. Whether a court has personal jurisdiction over a defendant is a question of law. *Coleman*, 83 S.W.3d at 805–06; *BMC Software*, 83 S.W.3d at 794. However, to resolve the issue of jurisdiction, the trial court must frequently determine questions of fact. *Coleman*, 83 S.W.3d at 806; *BMC Software*, 83 S.W.3d at 794. If a trial court makes findings of fact and conclusions of law, we may review the fact findings for legal and factual sufficiency. *BMC Software*, 83 S.W.3d at 794. If there is more than a scintilla of evidence to support the finding, the no-evidence challenge fails. *Id.* at 795. We reverse the ruling for factual insufficiency of the evidence only if the ruling is so against the

great weight and preponderance of the evidence as to be manifestly erroneous or unjust. *Minucci v. Sogevalor, S.A.,* 14 S.W.3d 790, 794 (Tex.App.-Houston [1st Dist.] 2000, no pet.). Unchallenged fact findings are binding on the appellate court. *Hotel Partners v. KPMG Peat Marwick,* 847 S.W.2d 630, 632 (Tex.App.-Dallas 1993, writ denied). We review de novo the trial court's legal conclusions based on the findings of fact to determine their correctness. *BMC Software,* 83 S.W.3d at 794. If we determine a conclusion of law is erroneous but the trial court nevertheless rendered a proper judgment, the erroneous conclusion does not require reversal. *Id.*

## PERSONAL JURISDICTION

■■■■ A Texas court may assert personal jurisdiction over a non-resident defendant only if the requirements of both the United States Constitution and the Texas long-arm statute are satisfied. *CSR, Ltd. v. Link,* 925 S.W.2d 591, 594 (Tex.1996) (orig.proceeding). The Texas long-arm statute allows a Texas court to exercise personal jurisdiction over a non-resident defendant who does business in Texas. TEX. CIV. PRAC. & REM.CODE ANN. § 17.042 (Vernon 1997); *BMC Software,* 83 S.W.3d at 795. The Texas long-arm statute reaches as far as federal and state constitutional guarantees of due process allow. *CSR,* 925 S.W.2d at 594. Therefore, "the requirements of the Texas long-arm statute are satisfied if the exercise of personal jurisdiction comports with federal due process limitations." *Id.* The due process clause permits a state to exert personal jurisdiction over a non-resident defendant only if the defendant has some minimum, purposeful contacts with the

state and the exercise of jurisdiction will not offend traditional notions of fair play and substantial justice. *Dawson–Austin,* 968 S.W.2d at 326. Thus, even if a nonresident defendant has purposely established minimum contacts with the forum state, the exercise of jurisdiction must still be fair and reasonable. *See Guardian Royal Exch. Assur., Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d 223, 228 (Tex. 1991). Because we conclude the issue of fair play and substantial justice is dispositive, we limit our discussion to only that prong of the due process analysis.

■■■■ Under this prong, a defendant's contacts must be evaluated in light of other factors to determine whether the assertion of personal jurisdiction comports with fair play and substantial justice. *Guardian Royal Exch.,* 815 S.W.2d at 232. These factors include (1) the burden on the defendant, (2) the interests of the forum state in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several States in furthering fundamental substantive social policies.[2] *Id.* "When the defendant is a resident of another nation, the court must also consider the procedural and substantive policies of other nations whose interests are affected by the assertion of jurisdiction by a state court." *Id.* at 228. The unique burdens placed upon a foreign defendant who must defend herself in a foreign legal system carries significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders. *Id.* at 229.

2. Because this dispute is not between coequal sovereigns in our federal system, "we need not consider the interstate judicial system's interest in obtaining the most efficient resolution of controversies or the shared interest of

the several states in furthering fundamental substantive social policies." *Guardian Royal Exch. Assur., Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d 223, 232 n. 17 (Tex.1991).

■ "The state of Texas has an obvious interest in providing a forum for resolving disputes involving its citizens, particularly those disputes in which the defendant allegedly committed a tort in whole or in part in Texas." *D.H. Blair Inv. Banking Corp. v. Reardon,* 97 S.W.3d 269, 278 (Tex.App.-Houston [14th Dist.] 2002, pet. dism'd w.o.j.). However, the interests of Texas in adjudicating this dispute are minimal. Ana Maria is a citizen and resident of Mexico and she has participated in the Mexican probate proceeding. Aguirre was a resident of Florida at the time he intervened, and now resides in California. Aguirre has entered an appearance in the Mexican probate court by filing a claim on his note in that proceeding. The note upon which Aguirre sues was executed in Mexico. In her original petition, Ana Maria admits all appellants are citizens of Mexico. All appellants, except Barbara, reside in Mexico. Barbara resides in Mexico and occasionally resides in Dallas, Texas and California, but she has participated in the Mexican probate proceeding. All meetings between appellants and Hernandez regarding the transfer of funds occurred in Hernandez's office in Monterey, Mexico; all faxes regarding the transfers were received at his Monterey office; and all instructions regarding the transfers were given and received in Mexico.

In her petition, Ana Maria alleges the wrongful transfer of funds violates not only Texas probate law, but Mexican probate law as well. Although Texas has a substantial interest in adjudicating probate disputes, including property held in Texas, here, no estate assets, with the exception of the underlying tort action for the wrongful transfer of funds, are in Texas. Although Aguirre has filed a claim on his note in the Texas probate proceeding, the Mexican probate court has already assigned the note a value and priority. A successor executor of the estate has been appointed in the still-pending Mexican probate proceeding. Finally, there is no evidence the Mexican court lacks jurisdiction to resolve the claims presented by the appellees. Under the facts and circumstances of this case, we conclude that the exercise of personal jurisdiction over the appellants is unreasonable and does not comport with fair play and substantial justice.

## CONCLUSION

We hold it is inconsistent with federal constitutional requirements of due process for Texas courts to assert in personam jurisdiction over the appellants in this cause. Accordingly, we reverse the trial court's judgment as to Barbara Brittingham–Sada de Powers, Guillermo Marroquin–Brittingham, Mauricio Marroquin–Brittingham, Juan Carlos Lobeira–Brittingham, Daniela Lobeira–Brittingham, and Brandon Milmo–Brittingham; and render a dismissal in their favor. We affirm the trial court's judgment as to Angel Eduardo Marroquin–Brittingham, Maria Cristina Lobeira–Brittingham, and Daniel Milmo–Brittingham.