**In re ESTATE OF Emogene Bedingfield DAVIS, Deceased.**

**No. 06–06–00086–CV.**

Court of Appeals of Texas, Texarkana.

Submitted Feb. 7, 2007.

Decided Feb. 27, 2007.

---

John M. Stuckey, Jr., Newman, GA, pro se.

Troy A. Hornsby, Miller, James, Miller & Hornsby, LLP, Texarkana, for appellee.

Before MORRISS, C.J., CARTER and MOSELEY, JJ.

## OPINION

Opinion by Justice CARTER.

John M. Stuckey, Jr., is the executor of Emogene Bedingfield Davis' estate. He collected and divided assets that he identified as being of her estate and evidently distributed a substantial portion. Norris Davis,[1] Emogene's husband, took umbrage about some of the collections, believing that some of the properties were his. Norris also died.

Emogene died July 14, 2000. An inventory and list of claims was filed August 30, 2001. It appears Stuckey filed a partial accounting October 7, 2003.

On February 27, 2004 (under the generic estate cause number), Diana and David Sewell (coexecutors of Norris' estate) filed a complaint against Stuckey for damages based on his malfeasance as executor of Emogene's estate—alleging that he took control of funds belonging at least in part to Norris, that he paid far too much in attorney's fees, that he did not distribute her estate as required by law, and that he failed to distribute to Norris the money he was due, but has distributed portions of

---

1. Because Emogene and Norris share a common last name, we will refer to each by his or her first name to avoid confusion.

the estate to other beneficiaries. In short, the Sewells alleged Stuckey was willfully refusing to do his job as executor. The action was titled against him as executor of the estate, but it is clear from the captions of the various documents, as well as from their contents, that the suit is against Stuckey, individually and as executor.

In response to that pleading, as part of his answer filed April 2, 2004, Stuckey alleged the state court had no personal jurisdiction over him—but did not request a hearing. On April 5, 2004, Stuckey filed a document removing the case to the United States District Court—originally in Georgia, which was transferred to Texas. Seventeen months later, the federal court remanded the action back to state court November 7, 2005.

It appears that, on January 12, 2006, the Sewells filed a motion for ruling on interim relief, which was granted May 16, 2006.

Between that filing and the order, Stuckey filed a document February 7, 2006, entitled as his "special appearance." He filed a second request for a ruling July 13, 2006. He asked the trial court to stay the underlying trial until he had an appealable ruling.

On July 19, 2006, the trial court denied his special appearance and granted the Sewells' motion for sanctions, finding the special appearance was groundless and brought in bad faith for harassment and delay. As an interlocutory ruling on a special appearance, the order was immediately appealable. TEX. CIV. PRAC. & REM. CODE ANN. art. 51.014 (Vernon Supp.2006).

**Preliminary Issues**

There are several matters to be resolved before addressing the merits. First, we have no reporter's record. However, that does not have the effect in this particular situation that it would in a normal appeal.

■■■ The Texas Supreme Court in *Michiana Easy Livin' Country, Inc. v. Holten,* 168 S.W.3d 777 (Tex.2005), concluded that, in a pretrial hearing context:

> If the proceeding's nature, the trial court's order, the party's briefs, or other indications show that an evidentiary hearing took place in open court, then a complaining party must present a record of that hearing to establish harmful error. But otherwise, appellate courts should presume that pretrial hearings are nonevidentiary, and that the trial court considered only the evidence filed with the clerk.

*Id.* at 783 (footnotes omitted). The opinion makes it clear that a mere statement in the order that the court heard the evidence is insufficient to show that an evidentiary hearing occurred; thus, we must apply the presumption that the pretrial hearing was nonevidentiary and that the court considered only the evidence filed with the clerk. The lack of a reporter's record is not a consideration in this situation.

■■■ The second matter is the absence of findings of fact and conclusions of law. Davis complains because the court did not file findings of fact and conclusions of law despite his request. "Texas Rules of Civil Procedure 296 and 297 do not impose any duty on the trial court to file findings of fact and conclusions of law where there has been no trial, such as a special appearance that is subject to interlocutory appeal." *Niehaus v. Cedar Bridge, Inc.,* 208 S.W.3d 575, 579 n. 5 (Tex.App.-Austin 2006, no pet.) (quoting *Bruno's, Inc. v. Arty Imps., Inc.,* 119 S.W.3d 893, 897 n. 2 (Tex.App.-Dallas 2003, no pet.)); *see* TEX. R.APP. P. 28.1. Thus, no intrinsic error has been shown by the trial court's failure to file findings and conclusions.

## Jurisdictional Requirements

■ Stuckey alleges that, since he is a nonresident of Texas, the County Court at Law for Bowie County does not have jurisdiction. A claim of special appearance under Tex.R. Civ. P. 120a is the procedural method used to avoid the jurisdiction of Texas courts as authorized under the Texas long-arm statute. The statute allows Texas courts jurisdiction over nonresident defendants doing business in Texas. Tex. Civ. Prac. & Rem.Code Ann. § 17.042 (Vernon 1997). While the long-arm statute does enumerate certain examples of doing business, it does not provide an exclusive list. *Id.* ("In addition to other acts that may constitute doing business, a nonresident does business in this state if . . .," then setting out three acts); *see also BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 795 (Tex.2002); *Schlobohm v. Schapiro,* 784 S.W.2d 355, 356–57 (Tex.1990). The statute is construed as extending Texas courts' jurisdiction over nonresident defendants as far as the federal constitutional requirement of due process permits. *Marchand,* 83 S.W.3d at 795.

■ For a Texas court to exercise personal jurisdiction over a nonresident, two conditions must be met: the Texas long-arm statute must authorize it, and it must be consistent with the due-process guarantees provided in our federal and state constitutions. *Schlobohm,* 784 S.W.2d at 356; *Ennis v. Loiseau,* 164 S.W.3d 698, 706 (Tex.App.-Austin 2005, no pet.). Under the Due Process Clause of the Fourteenth Amendment, jurisdiction is proper if a nonresident established "minimum contacts" with Texas and maintenance of the suit does not offend traditional notions of fair play and substantial justice. *Am. Type Culture Collection, Inc. v. Coleman,* 83 S.W.3d 801, 806 (Tex. 2002).

■ The fundamental purpose of the minimum-contacts analysis has been to protect the nonresident defendant from the unfair and unforeseen assertion of jurisdiction. *See World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). This requires a determination of whether the nonresident defendant has purposely availed itself of the privilege of conducting activities within the forum state to invoke the benefits and protection of its laws. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474–75, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). The "purposeful availment" requirement guarantees that a nonresident defendant will not be compelled to defend a suit in a jurisdiction based solely on random, fortuitous, or attenuated contacts or the unilateral activity of another party or a third person. *Id.* at 475–76, 105 S.Ct. 2174; *see also Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 417, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *Nikolai v. Strate,* 922 S.W.2d 229, 234 (Tex.App.-Fort Worth 1996, writ denied).

■ Nonresident defendants must have fair warning that particular activities may subject them to a foreign sovereign's jurisdiction. *Rudzewicz,* 471 U.S. at 474–75, 105 S.Ct. 2174. A nonresident defendant must therefore perform some overt act to subject himself or herself to the possibility of being compelled to defend a suit in a foreign court. *Tuscano v. Osterberg,* 82 S.W.3d 457, 466 (Tex.App.-El Paso 2002, no pet.). This "fair warning" requirement is satisfied if the defendant has "purposefully directed" his or her activities at residents of the forum and the litigation results from alleged injuries that "arise out of or relate to" those activities. *Rudzewicz,* 471 U.S. at 472, 105 S.Ct. 2174; *Tuscano,* 82 S.W.3d at 466.

## Standards of Review

Whether a trial court has personal jurisdiction over a defendant is a question of law. *Marchand*, 83 S.W.3d at 793. The plaintiff bears the initial burden of pleading sufficient allegations to bring a nonresident defendant within the provisions of the long-arm statute, while the defendant challenging a Texas court's personal jurisdiction over it must negate all jurisdictional bases. *Id.* "Personal jurisdiction exists if the nonresident defendant's minimum contacts give rise to either specific jurisdiction or general jurisdiction." *Id.* at 795.

We may review the trial court's resolution of disputed fact issues for legal and factual sufficiency under the same standards of review that we apply in reviewing a jury verdict. *TravelJungle v. Am. Airlines, Inc.*, 212 S.W.3d 841 (Tex.App.-Fort Worth 2006, no pet. h.); *Michel v. Rocket Eng'g Corp.*, 45 S.W.3d 658, 668 (Tex.App.-Fort Worth 2001, no pet.).

## Personal Jurisdiction

There are two variations within the bounds of personal jurisdiction. Personal jurisdiction exists if the nonresident defendant's minimum contacts give rise to either specific or general jurisdiction. *Marchand*, 83 S.W.3d at 795; *Schexnayder v. Daniels*, 187 S.W.3d 238, 243 (Tex.App.-Texarkana 2006, pet. dism'd w.o.j.).

General jurisdiction exists when the defendant's contacts with Texas "are continuous and systematic so that the forum may exercise personal jurisdiction over the defendant even if the cause of action did not arise from or relate to activities conducted within the forum state." *Marchand*, 83 S.W.3d at 796. This is described as being a more demanding minimum-contacts analysis than specific jurisdiction. *Coleman*, 83 S.W.3d at 807. Thus, general jurisdiction allows a forum to exercise jurisdiction over a defendant even if the cause of action did not arise from or relate to a defendant's contacts with the forum. *Id.* at 806–07; *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 228 (Tex.1991). Those contacts should be such as to justify categorizing the defendant as a resident of this State. *Schexnayder*, 187 S.W.3d at 243.

Specific jurisdiction exists when the defendant's liability arises from or is related to an activity conducted within the forum. *Marchand*, 83 S.W.3d at 796 (citing *Guardian Royal Exch.*, 815 S.W.2d at 228). For a court to exercise specific jurisdiction over a nonresident defendant, two requirements must be met: (1) the defendant's contacts with the forum must be purposeful; and (2) the cause of action must arise from or relate to those contacts. *Coleman*, 83 S.W.3d at 806.

Specific jurisdiction exists when the defendant's alleged liability "arises from or is related to an activity conducted within the forum." *Marchand*, 83 S.W.3d at 796. In other words, the cause of action must arise from, or relate to, the defendant's purposeful contacts. *Schexnayder*, 187 S.W.3d at 243.

## The Evidence

The pleadings agree on a number of points, and do not contest several others. Stuckey is not now—and never has been—a resident of Texas. His connection with Texas exists solely because of his appointment as executor of the estate of Emogene—and because of the actions which he undertook as executor. Those actions included applying for probate of the will, qualifying as independent executor, filing the required appraisement and list of claims, and collecting funds from bank accounts in Texas and moving the money to Georgia banks (from which some unknown portion of the funds was divided and pre-

sumably delivered to some of Emogene's beneficiaries). Texas Probate Code Section 78 disqualifies a nonresident from serving as an executor unless he or she appoints a resident agent to accept service of process in all actions or proceedings with respect to the estate. TEX. PROB.CODE ANN. § 78 (Vernon 2003). Such appointment must be filed with the court. Stuckey originally retained local counsel to represent him and to act as that agent.[2] Stuckey acknowledges in his brief that he came to Texas six times during the course of the ongoing probate proceeding and that he mustered and moved the assets to Georgia. The action filed against him in the probate proceeding contended that he violated specific statutory requirements under Texas law and that his actions constituted breach of fiduciary duty, negligence, and conversion.

◼ In their original petition, the Sewells alleged Stuckey had appointed Bill Hannon of Atlanta, Texas, as his agent for service of process. The applicable statute requires such an appointment concerning "all actions or proceedings with respect to the estate." TEX. PROB.CODE ANN. § 78(c). We do not have a full clerk's record of all proceedings, including the return of citation, but the record shows that, after the pleading was filed against Stuckey, faxed copies of such documents were transmitted between Hannon and Stuckey. A hearing was set by the Bowie County Court at Law for April 20, 2004, on the motion for an injunction, but on April 5, 2004, attorneys in Georgia acting on Stuckey's behalf removed the case to federal court where it remained for several months. Texas law requires the appointment of an agent for the very purpose of responding to matters relating to the estate which is being ad-

ministered by the nonresident. Some courts have held that the designation of an agent for process is sufficient to grant consent to be sued in that jurisdiction and therefore confers personal jurisdiction on the courts of that state. *See Sondergard v. Miles, Inc.,* 985 F.2d 1389, 1396 (8th Cir.1993); *Ocepek v. Corporate Transport, Inc.,* 950 F.2d 556 (8th Cir.1991); *Knowlton v. Allied Van Lines, Inc.,* 900 F.2d 1196, 1199–1200 (8th Cir.1990). We acknowledge that other Texas courts of appeals have come to an opposite conclusion. *See Conner v. ContiCarriers & Terminals, Inc.,* 944 S.W.2d 405, 417 (Tex.App.-Houston [14th Dist.] 1997, no writ); *Juarez v. United Parcel Serv. de Mexico S.A. de C.V.,* 933 S.W.2d 281, 285 (Tex.App.-Corpus Christi 1996, no writ). Since this issue is not squarely before us, we will not address whether Stuckey's designation of an agent for service in Texas and the service of that agent in Texas alone is sufficient to confer jurisdiction in Texas courts. At the least, this is an important factor to consider when determining if the nonresident has sufficient contacts with the State of Texas to confer jurisdiction on Texas courts. The United States Supreme Court has reaffirmed that serving a nonresident in the state of the forum alone satisfies the due-process requirements. *See Burnham v. Superior Court of Cal.,* 495 U.S. 604, 110 S.Ct. 2105, 109 L.Ed.2d 631 (1990) (in-state service of process on nonresident is consistent with due process); *Stallworth v. Stallworth,* 201 S.W.3d 338 (Tex.App.-Dallas 2006, no pet.).

### Specific Jurisdiction

◼ The question is: Do Stuckey's actions constitute sufficient contacts to authorize specific jurisdiction in Texas

---

2. We note that Stuckey (an attorney licensed in Georgia) retained, then fired, at least two

Texas attorneys, and is now acting pro se.

courts? We conclude that it does. Stuckey petitioned the Texas court to be recognized as the independent executor of the estate and made several trips to Texas in carrying out those duties. By invoking the authority of the Texas court as executor of the estate, Stuckey took assets from institutions in Texas and distributed some of those assets. Additionally on his appointment, Stuckey named an agent in Texas to accept citation in accordance with Texas law. We believe these actions are sufficient to establish the required minimum contacts with Texas to authorize Texas to assert jurisdiction. In a similar situation, the Austin Court of Appeals found an out-of-state executor subject to personal jurisdiction in Texas because she took control of property within the State. *Smith v. Lanier,* 998 S.W.2d 324 (Tex.App.-Austin 1999, pet. denied).

There is also authority that voluntarily filing a lawsuit in a jurisdiction is a purposeful availment of the jurisdiction's facilities and can subject a party to personal jurisdiction in another lawsuit when the lawsuits arise from the same general transaction. *Primera Vista S.P.R. de R.L. v. Banca Serfin, S.A. Institucion de Banca Multiple Grupo Financiero Serfin,* 974 S.W.2d 918, 926 (Tex.App.-El Paso 1998, no pet.).[3]

All of the claims involved here are directly related to Stuckey's actions as executor of the estate of a resident of Texas. Thus, under either theory, specific jurisdiction exists, and Stuckey has made himself subject to personal jurisdiction within this State.

### General Jurisdiction

In light of our determination that Stuckey is subject to the Texas court under the concept of specific jurisdiction for this action, we need not reach the question of whether the court would have general jurisdiction under these facts.

### Alternative Arguments

Stuckey also argues that it is unfair to subject him to suit in Texas because of the "home court advantage." He argues that "the non-resident defendant almost always earns the contempt of the court and leaves plaintiff's counsel firmly in the drivers' seat—which is exactly what happen [sic] in this case." He argues this is shown most clearly by the court's findings that his special appearance was "groundless and brought in bad faith, brought for the purpose of harassment and delay and other improper purposes."

Stuckey has seized on "death trap" language in a footnote in *W & F Transp., Inc. v. Wilhelm,* 208 S.W.3d 32, 41 (Tex.App.-Houston [14th Dist.] 2006, no pet.), declaring that the *"Wilhelm* Rule" explains the difficulties that a party faces in pursuing a special appearance under Texas procedural rules and justifies his or her failure to take any act to attempt to support his or her position. The footnote reads:

> This speculative possibility was implicitly rejected in *Holten* [168 S.W.3d 777]. A special appearance like that in *Holten* is fraught with procedural death traps, and counsel is much more likely to waive his client's jurisdictional challenge than is counsel likely to invite error during closing argument at the end of trial.

*Wilhelm,* 208 S.W.3d at 41 n. 8.

We are unpersuaded by the footnote. The same court has also recently recognized that special appearance claims are not so easily waived as might be thought from an unqualified reading of the *Wilhelm* footnote. *See Huynh v. Nguyen,* 180 S.W.3d 608, 617 (Tex.App.-Houston [14th

---

**3.** *See Zamarron v. Shinko Wire Co.,* 125 S.W.3d 132, 143 (Tex.App.-Houston [14th Dist.] 2003, pet. denied); *Tuscano,* 82 S.W.3d at 467.

Dist.] 2005, no pet.). A finding of waiver has been reversed by the Texas Supreme Court recently in *Exito Elecs. Co. v. Trejo*, 142 S.W.3d 302, 308 (Tex.2004). Similarly, waiver has been found not to exist in a number of other scenarios in which counsel took other action than pursuing the special appearance solo. *See In re M.G.M.*, 163 S.W.3d 191, 201 (Tex.App.-Beaumont 2005, no pet.); *Brittingham–Sada de Powers v. Ancillary Estate of Brittingham–McLean*, 158 S.W.3d 518, 523 (Tex.App.-San Antonio 2004, no pet.). Although procedural requirements exist, they are not unreasonable.

 Further, although Stuckey states in his brief that the special appearance rule is per se unconstitutional because of the psychological bias against an out-of-state party as combined with "unduly strict requirements" and "procedural traps," he specifies no particular requirement that is overly strict, does not discuss the rule in any depth, and does not attempt to apply constitutional analysis to the application of the rule.[4] We thus decline to address those contentions.

 Stuckey argues he was terminally wronged because the County Court at Law did not promptly rule on his special appearance after he filed it. That is not entirely accurate. He filed a removal to federal court—of a state probate proceeding—to Georgia. The Georgia federal court, in due course, sent it to the Eastern District of Texas federal court, which in due course returned it to the original Bowie County Court at Law from which he had removed it. This resulted in seventeen months' delay, undoubtedly additional attorney's fees, and no progress toward a conclusion. Before the most recent proceeding, the estate has remained open for six years, with one individual, Emogene's husband, attempting to recover monies he believed were at least partially his. Rather than resolving the matter, the record suggests that other interests became central to the proceeding. Whether those interests and Stuckey's actions can be proven to be improper and actionable is a matter not before this Court in this appeal. At this point, we decide only whether Stuckey, by accepting the mantle of executor, submitted himself to the jurisdiction of Texas courts. We also note that jurisdiction and ultimate liability are two different considerations—it is possible for an entity to be subject to jurisdiction, yet not ultimately liable under other theories of law. *See Lanier*, 998 S.W.2d at 334.

## Fair Play and Substantial Justice

 Stuckey also argues that the constitutional requirements have been violated by the ruling. Even if Stuckey has the minimum contacts to authorize Texas courts to assert jurisdiction, we must also determine whether the assertion of such jurisdiction comports with fair play and substantial justice. *Guardian Royal Exch.*, 815 S.W.2d at 232. We will consider the appropriate factors:

(1) The burden on the defendant. We find the burden on Stuckey is slight. When the nonresident purposefully establishes the minimum contacts required, it is rare that the exercise of jurisdiction by the forum state would not comply with fair play and substantial justice. *Id.* at 231. Nor is distance alone ordinarily sufficient to defeat jurisdiction. *Id.*

(2) The interests of the forum state in adjudicating the dispute. This dispute arises from a decedent's estate filed and administered in the State of Texas. The

---

4. *See* Tex.R.App. P. 38.1(h); *Stephens v. Dolcefino*, 126 S.W.3d 120, 130 (Tex.App.-Houston [1st Dist.] 2003), *writ denied*, 181 S.W.3d 741 (Tex.2005).

deceased was a resident of Texas, most of the property was located in Texas, and one of the beneficiaries is a charitable organization in Texas. The issues involve the application of Texas probate law. We believe it is generally preferable to allow the forum court to adjudicate its own laws.

(3) The plaintiffs' interest in obtaining convenient and efficient relief. Undoubtedly the local Texas court would be more efficient for the plaintiffs, residents of Texas.

The final two factors:

(4) The interstate judicial system's interest in obtaining the most efficient resolution of controversies, and

(5) The shared interests of the several states in furthering fundamental substantive social policies are not applicable in this case.

This case is factually very similar to *Lanier*, 998 S.W.2d at 334. As in *Lanier*, Stuckey took advantage of the laws of the State of Texas to exercise control over the decedent's assets. He purposefully directed his activities toward numerous Texas residents and institutions, activities that resulted in the removal from the State of the property that is the basis of the dispute. Further, the property was clearly subject to the jurisdiction of the Texas probate court. Under these circumstances, and for the reasons previously set out in our discussion of specific jurisdiction, we conclude that the assertion of personal jurisdiction over Stuckey does not offend traditional notions of fair play and substantial justice. We, therefore, find that sufficient evidence exists in the record to support the exercise of personal jurisdiction over Stuckey, both in his individual capacity and as executor.

**Counterpoint—Frivolous Appeal**

■■■ By counterpoint, the Sewells contend the appeal is frivolous and request this Court to award attorney's fees and costs as damages. *See* TEX.R.APP. P. 45. In deciding if an appeal is frivolous, this Court has previously held that the issue is whether the appellant had a reasonable expectation of reversal or whether he or she merely pursued the appeal in bad faith. An appellant's right of review will not be penalized unless there is a clear showing that he or she had no reasonable ground to believe that the judgment would be reversed. *In re Marriage of Long*, 946 S.W.2d 97, 99 (Tex.App.-Texarkana 1997, no writ) (citing *Long Trusts v. Atl. Richfield Co.*, 893 S.W.2d 686, 689 (Tex.App.-Texarkana 1995, no writ)). Even if the argument on appeal fails, if it has a reasonable basis in law and constituted an informed, good-faith challenge to the trial court's judgment, it should not be considered as a frivolous appeal. *Long*, 946 S.W.2d at 99. After analyzing the facts of this appeal based on that standard, we deny the counterpoint.

We affirm the order denying the special appearance.