Court Of Appeals
Fourth Court of Appeals District of Texas
San Antonio


★ ★ ★  ★ ★ ★

## OPINION

No. 04-08-00869-CV

Irma Roldan **WALZ** a/k/a Irma Walz Martinez,
Appellant

v.

Veronica **MARTINEZ**, Patricia Martinez,
Maria Fernanda Martinez, and Guillermo Martinez,
Appellees

From the 408th Judicial District Court, Bexar County, Texas
Trial Court No. 2006-CI-05081
Honorable David A. Berchelmann, Jr., Judge Presiding

Opinion by:    Catherine Stone, Chief Justice

Sitting:       Catherine Stone, Chief Justice
               Phylis J. Speedlin, Justice
               Steven C. Hilbig, Justice

Delivered and Filed: November 25, 2009

AFFIRMED AS MODIFIED

Irma Roldan Walz a/k/a Irma Walz Martinez appeals the trial court's order granting a special

appearance filed by the appellees, who were third party defendants in the underlying cause. Walz

contends the trial court erred in sustaining the special appearance because the appellees purposefully

availed themselves of the jurisdiction of the Texas courts by: (1) filing a will contest in a pending

probate proceeding and seeking injunctive relief against Walz in that proceeding; and (2) initiating

the underlying lawsuit against Walz as the purported shareholders of Construcciones Modernas de Mexico, S.A. ("Construcciones"). Walz further contends the trial court erred in dismissing her claims with prejudice. We sustain Walz's complaint regarding the dismissal being with prejudice, but we overrule Walz's other complaints. We modify the trial court's order to dismiss the underlying cause without prejudice and affirm the trial court's order as modified.

## BACKGROUND

Fernando Antonio Martinez Cobo and Walz were married on April 8, 2004. At the time of the marriage, Fernando had been diagnosed with prostate cancer. Fernando had four children from two prior marriages: Maria Fernanda Martinez, Guillermo Martinez, Veronica Martinez, and Patricia Martinez.

Fernando died on February 18, 2006. Soon thereafter, Walz filed an application in a Texas probate court to probate a will dated January 31, 2005.

On March 1, 2006, Fernando's children filed a petition to contest the will in the probate court. The petition also included an application for the appointment of a temporary administrator, a request for an accounting, and a request for a temporary restraining order and injunctive relief. The will was contested on the grounds that it was not executed with proper formalities and that Fernando lacked testamentary capacity to execute the will or was unduly influenced. The petition requested the appointment of a qualified third party with no interest in the estate as temporary administrator. The temporary restraining order was requested to prevent Walz from selling, transferring, or disposing of the assets of the estate pending the outcome of the will contest.

Maria's affidavit was attached to the petition in support of the request for the temporary restraining order. In her affidavit, Maria stated that she had learned that many of the assets Fernando

owned and acquired before his marriage to Walz had been "sold, transferred and/or otherwise secreted after his marriage to [Walz] under very suspicious, suspect and/or fraudulent circumstances, while his physical, and mental abilities were rapidly deteriorating." Maria also stated that the assets of one corporation in Mexico in which Maria also held an interest had been liquidated without her knowledge and consent. Maria further stated that some of Fernando's assets in Mexico had already been transferred to Walz's daughter. Based on Walz's prior actions, Maria stated that she believed Walz would make every effort to "hide, sell or transfer the estate's assets in order to deprive" Fernando's children "of any benefit in the estate should [they] prevail in contesting the will."

On March 1, 2006, a hearing was held on the application for temporary restraining order filed by Fernando's children in probate court. Fernando's children appeared at the hearing by and through counsel of record. At the conclusion of the hearing, the probate court signed an agreed order in which Walz agreed to refrain from: (1) taking any action to release, remove, or transfer any funds belonging to Fernando's estate; and (2) selling or disposing of any asset belonging to the estate.

On March 30, 2006, Construcciones filed a petition and an application for a temporary restraining order and temporary injunction in a Texas district court against Walz and two entities that were the custodians of certain accounts in the United States. Construcciones sought to recover funds and property belonging to it that allegedly had been illegally taken or converted by Walz for her own use and benefit. The petition alleged that although Walz and her daughter were given authority as assistants to the prior administrator of Construcciones to collect and administer funds, Walz sold corporate assets and failed to account for the proceeds which she wrongfully removed to the United States and deposited into accounts of which Walz was the sole owner. The proceeds were alleged to be in excess of $3.5 million. The district court signed an order on March 30, 2006, granting the

temporary restraining order and setting a hearing on the temporary injunction. The parties later agreed to a temporary injunction.

On November 16, 2006, Walz filed a third party petition asserting claims against various third party defendants, including Fernando's children. Walz alleged that Fernando owned 90% of the shares of stock of Construcciones. Walz further alleged that although Fernando's children contend Fernando gave them his shares of Construcciones on March 18, 2005 in Mexico, Fernando was undergoing chemotherapy in the United States when the gifting of the shares allegedly occurred. Because Mexican law required Fernando to be present in order to gift his shares, Walz asserted that any gifting of the shares was invalid because Fernando was too ill to travel to Mexico on that date. Walz alleged that Fernando's children had fraudulently produced forged documents in Mexico to support the gifting of the shares. Walz asserted claims for fraud, conversion, and civil conspiracy against the third party defendants relating to the actions taken with regard to the alleged gifting of the shares.

In December of 2006, Fernando's children filed a special appearance and a supplemental special appearance. Each of Fernando's children signed an affidavit stating his or her only contact with the State of Texas was for the purpose of visiting relatives on a temporary basis.

On March 28, 2007, all of the parties in the district court case agreed to a level 3 discovery control plan. On April 12, 2007, the trial court approved the report of a mediator stating that mediation was conducted on September 29, 2006, but the case did not settle. On April 18, 2007, the trial court granted a motion to withdraw filed by the attorneys representing both Construcciones and Fernando's children. Approximately one year later, Construcciones non-suited its claims against

Walz and against the only defendant entity remaining since the other defendant entity had obtained a summary judgment.

On June 6, 2008, Walz filed her response to the special appearance previously filed by Fernando's children. In the response, Walz asserted the court had jurisdiction over Fernando's children because they had filed various motions and pleadings in the probate proceeding, participated in discovery, sought and received affirmative relief in obtaining a temporary restraining order and an injunction, and made numerous appearances. In the alternative, Walz asserted Fernando's children had purposefully availed themselves of the laws of Texas by seeking affirmative relief against Walz as the purported shareholders of Construcciones. Walz alleged that Construcciones had filed its lawsuit against her at the request of Fernando's children in their capacity as alleged shareholders.

The trial court held a hearing on the special appearance. At the hearing, the attorney representing Fernando's children noted that Walz's third party petition expressly alleged that the actions giving rise to the claims occurred in Mexico. At the conclusion of the hearing, the district court granted the special appearance, and Walz appeals the district court's order.

### DISCUSSION

Personal jurisdiction is a question of law which we review *de novo*. *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 337 (Tex. 2009). However, the trial court frequently must resolve questions of fact before deciding the jurisdiction question. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). When a trial court does not issue findings of fact and conclusions of law with its special appearance ruling, all facts necessary to support the judgment and supported by the evidence are implied. *Id*. at 795. When the appellate record includes the reporter's

and clerk's records, these implied findings are not conclusive and may be challenged for legal and factual sufficiency. *Id*.

Under constitutional due process analysis, personal jurisdiction is achieved when: (1) the nonresident defendant has established minimum contacts with the forum state; and (2) the assertion of jurisdiction complies with traditional notions of fair play and substantial justice. *Id*. A defendant establishes minimum contacts with a state when it purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Id*. The defendant's activities, whether they consist of direct acts within Texas or conduct outside Texas, must justify a conclusion that the defendant could reasonably anticipate being called into a Texas court. *Id*. A nonresident's contacts can give rise to either specific or general jurisdiction. *Id*.

General jurisdiction arises when the defendant's contacts within the forum are continuous and systematic. *Id*. Specific jurisdiction arises when: (1) the defendant purposefully avails itself of conducting activities in the forum state; and (2) the cause of action arises from or is related to those contacts or activities. *Id*. In determining whether a defendant purposefully availed itself of the privilege of conducting activities in Texas: (1) only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person; (2) the contacts relied upon must be purposeful rather than random, fortuitous, or attenuated; and (3) the defendant must seek some benefit, advantage, or profit by availing itself of the jurisdiction. *Id*. at 338-39.

A.     Purposeful Availment Through Will Contest

Walz initially contends the trial court erred in granting the special appearance because Fernando's children purposefully availed themselves of the privilege of filing a will contest and seeking affirmative relief in the Texas probate proceeding. Walz relies on two opinions to support

her contention. *See In re Estate of Davis*, 216 S.W.3d 537 (Tex. App.—Texarkana 2007, pet. denied); *Smith v. Lanier*, 998 S.W.2d 324 (Tex. App.—Austin 1999, pet. denied).

In *In re Estate of Davis*, John M. Stuckey, Jr. was appointed as the executor of an estate by a Texas probate court. 216 S.W.3d at 541. Stuckey was subsequently sued, both individually and as executor, for damages based on his alleged malfeasance as executor of the estate. *Id*. at 541-42. Stuckey alleged the state court lacked personal jurisdiction over him. *Id*. at 542. Stuckey's actions in Texas included: (1) applying for probate of the will; (2) qualifying as independent executor; (3) filing the required appraisement and list of claims; and (4) collecting funds from bank accounts in Texas and moving the money to Georgia banks. *Id*. at 544-45. In analyzing the minimum contacts that existed, the Texarkana court noted that Stuckey had petitioned the Texas court to be recognized as the independent executor and made several trips to Texas in carrying out those duties. *Id*. at 546. The court further noted that Stuckey invoked the authority of the Texas court as executor to take assets from institutions in Texas and distribute them. *Id*. Finally, the court noted that Stuckey named an agent in Texas to accept service of process in all actions and proceedings with respect to the estate. *Id*. at 546. Because all of the claims against Stuckey arose from his actions as the executor of the estate of a Texas resident, the Texarkana court concluded that specific jurisdiction existed. *Id*.; *see also Succession of Simms*, 175 So.2d 113, 123 (La. Ct. App. 1965) (finding minimum contacts satisfied where defendants qualified as executors in probate proceeding to administer Louisiana property).

In *Smith v. Lanier*, Theodore and Wylma Reid married after retirement age and remained married for more than twenty-five years. 998 S.W.2d at 328. The Reids resided in Texas and owned property valued at more than $2,500,000.00. *Id*. Carol Ann Reid Smith, Mr. Reid's only child from

a previous marriage, resided in South Carolina during the Reids' marriage. *Id*. In February of 1998, Smith came to Texas to help the Reids move into a retirement home in Austin. *Id*. During the visit, Smith attended a meeting with Mr. Reid and his attorney at which Smith accepted Mr. Reid's power of attorney and aided in the drafting of his will. *Id*. Mr. Reid's will left Smith all of his property and named her as the personal representative. *Id*. When Mrs. Reid died in June of 1998, her will was admitted for probate in Texas in July of 1998, and Sidney Lanier was named as her independent executor. *Id*. Mrs. Reid left all of her property to the Texas Baptist Children's Home. *Id*.

Smith returned to Austin for Mrs. Reid's funeral and began using her father's power of attorney to gather his assets. *Id*. Two weeks after the funeral, Smith returned to Texas to move her father to South Carolina and to collect his assets and transfer them to South Carolina. *Id*. Over the next several weeks, using the power of attorney, Smith: (1) took all of Mr. Reid's financial records to South Carolina; (2) removed the securities from a safe-deposit box in Texas and closed the account; (3) transferred the securities to a Merrill Lynch account in South Carolina; (4) stored the Reids' automobile in Niederwald, Texas; (5) withdrew $42,000 from the Reids' account at Bank One in Austin and deposited it into two accounts in South Carolina; and (6) established her power of attorney over Mr. Reid's American Express mutual fund account. *Id*. at 328-29.

Mr. Reid died in August of 1998. In September of 1998, Mr. Reid's will was admitted for probate in South Carolina. *Id*. at 329. Lanier initiated proceedings in Texas to halt the probate process in South Carolina to protect Mrs. Reid's estate. *Id*. Lanier filed a declaratory judgment action seeking to determine the characterization of the property owned by the Reids, i.e., community or separate. *Id*. Lanier also obtained a temporary restraining order freezing one-half of the assets owned by the Reids. *Id*.

Smith challenged the Texas court's jurisdiction over her as an individual. *Id*. at 333. The Austin court noted, however, that Smith, acting as attorney in fact, conducted several transactions with various Texas residents and institutions involving the Reids' property. *Id*. at 334. The Austin court concluded, "As attorney in fact, Smith took advantage of the laws of the State of Texas to exercise control over her father's assets. She purposefully directed her activities towards Texas residents and institutions, activities that resulted in the removal from the state of the property that is the basis of the dispute. Furthermore, she was on notice that the property might be subject to the jurisdiction of the Texas probate court" through her awareness of Texas's community property laws. *Id*. at 335. Accordingly, the Austin court held that sufficient evidence supported the exercise of personal jurisdiction over Smith in her individual capacity. *Id*.

The facts in both *In re Estate of Davis* and *Smith v. Lanier* are readily distinguishable from the instant case. None of Fernando's children sought to be appointed as the executor of Fernando's estate, nor had they taken any action on behalf of Fernando's estate in Texas other than obtaining the agreed temporary restraining order and temporary injunction to protect the estate's assets.

Similarly, the primary case relied upon by Walz in her reply brief is also distinguishable. *See Turner v. Turner*, No. 14-98-00510-CV, 1999 WL 33659, at *6-7 (Tex. App.—Houston [14th Dist.] Jan. 28, 1999, no pet.) In *Turner*, John and Mary Turner, husband and wife, created a revocable trust. 1999 WL 33659, at *1. John's son, Bryon, subsequently moved his father into a nursing home in Texas and initiated guardianship proceedings in Texas. *Id*. Mary intervened in the guardianship, and Bryon and Mary subsequently entered into an agreed judgment pursuant to which Mary agreed to pay John's health care expenses from the money in the trust to the extent the expenses exceeded retirement payments John received. *Id*. Mary also agreed to provide Bryon with copies of the

statements for the trust account. *Id*. After John died, Bryon filed a petition to remove Mary as trustee, believing she was misappropriating funds from the trust. *Id*. In analyzing Mary's minimum contacts, the Houston court noted:

> Here, as intervenor in the guardianship suit, Mary inserted herself into the proceeding, and availed herself of this state's judicial system, thereby conferring specific jurisdiction on the trial court. Moreover, by entering into the agreed judgment, Mary, as trustee, contracted to perform her obligations – paying health care providers, making bank deposits, and sending accounting statements to Bryon – in Texas. Thus, Mary has purposefully availed herself the privileges and benefits of the laws of this state.

*Id*. at *7. Perhaps more importantly for purposes of the instant case, the court also noted, "a review of the record reflects that the claims [against Mary] arise from, and are related to Mary's alleged breach of the agreed judgment." *Id*. at *6.

As the Texas Supreme Court has noted, "purposeful availment alone will not support an exercise of specific jurisdiction." *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 579 (Tex. 2007). Instead, a second requirement must be satisfied. As the Texas Supreme Court has explained:

> Specific-jurisdiction analysis has two co-equal components. For specific-jurisdiction purposes, purposeful availment has no jurisdictional relevance unless the defendant's liability arises from or relates to the forum contacts. . . . . The 'arise from or relate to' requirement lies at the heart of specific jurisdiction by defining the required nexus between the nonresident defendant, the litigation, and the forum.

*Id*.

Unlike *Turner* where the claims arose from Mary's breach of the terms of an agreed judgment signed by a Texas court, the claims alleged against Fernando's children arise from an allegedly fraudulent transfer of shares of stock of a Mexican corporation in Mexico. Thus, even if contesting the will could be considered purposeful availment, the claims asserted by Walz do not arise from or relate to the will contest, the protection sought in relation to the assets of Fernando's estate, or any

other action taken by Fernando's children in the probate court proceeding. *See Gordon v. Granstedt*, 513 P.2d 165, 171 (Haw. 1973) (noting appearance in court in connection with a will contest does not imply consent that party would subject himself to the personal jurisdiction in that court in any subsequent litigation there on any matter involving the estate).

B.      Purposeful Availment Through Construcciones Lawsuit

Walz next asserts that Fernando's children purposefully availed themselves by acting as shareholders of Construcciones and initiating the lawsuit filed by Construcciones. Walz asserts that her claims against Fernando's children arise from the fraudulent actions they took in attempting to become the shareholders of Construcciones which enabled them to file the lawsuit in the corporation's name. Walz further contends that Fernando's children cannot shield themselves from liability because Construcciones was not an independent entity, citing *Esse v. BP Am. Prod. Co.*, No. 01-04-00567-CV, 2006 WL 1227724 (Tex. App.—Houston [1st Dist.] May 4, 2006, no pet. ) (mem. op.).

As a general rule, jurisdiction over an individual cannot be based upon jurisdiction over a corporation. *Nichols v. Lin*, 282 S.W.3d 743, 750 (Tex. App.—Dallas 2009, no pet.). Jurisdiction over an individual can be based on jurisdiction over a corporation with which the individual is associated only if the corporation is the alter ego of the individual. *Id*. Under the alter ego theory, courts disregard the corporate entity when there exists such unity between corporation and individual that the corporation ceases to be separate. *Mancorp, Inc. v. Culpepper*, 802 S.W.2d 226, 228 (Tex. 1990). An alter ego relationship may be shown from the total dealings of the corporation and the individual. *Id*. This showing may include evidence of the degree to which corporate formalities have been followed and corporate and individual property have been kept separately, the amount of

financial interest, ownership and control the individual maintains over the corporation, and whether the corporation has been used for personal purposes. *Id.*

The only evidence regarding the dealings between Fernando's children and Construcciones in the appellate record are translated corporate minutes documenting various corporate actions, including the transfer of shares to Fernando's children. Walz's petition does not contain any specific factual allegations to delineate her alter ego claim apart from asserting Fernando's children fraudulently obtained ownership of the shares, and the record contains no evidence to support an alter ego finding. *See Amaral v. Steele*, No. 14-02-00368-CV, 2002 WL 31427018, at *2 (Tex. App.—Houston [14th Dist.] Oct. 31, 2002, no pet.) (holding record did not support alter ego finding).

The only case cited by Walz in support of her argument is readily distinguishable. In *Esse*, the sole shareholder of a corporation consulted with his father, who was the sole officer and director of the corporation, regarding the sale of an asset of the corporation. 2006 WL 1227724, at *8. The claims asserted in the case included a claim for fraud and fraudulent transfer arising from the sale of that asset. *Id.* at *7. The asset was located in Texas and was one of the primary assets owned by the corporation. *Id.* at *8. The shareholder and his father discussed the corporation's affairs during monthly telephone conversations. *Id.* The shareholder and his father also discussed the price at which the asset should be sold, and the shareholder consented to the sale. *Id.*

Unlike the facts in *Esse*, the only activity alleged in the petition was that Fernando's children engaged in fraudulent actions in Mexico that resulted in the fraudulent transfer of shares of stock in a Mexican corporation to them. Based on the evidence presented, we hold personal jurisdiction cannot be exercised over Fernando's children based on Construcciones's filing of a lawsuit in Texas.

C.       Dismissal With Prejudice

Finally, Walz contends the trial court erred in dismissing her claim with prejudice. Fernando's children concede that the trial court erred in dismissing the claims with prejudice. We also agree that the dismissal with prejudice was erroneous. *See Geo-Chevron Ortiz Ranch #2 v. Woodworth*, No. 04-06-00412-CV, 2007 WL 671340, at *4 (Tex. App.—San Antonio Mar. 7, 2007, pet. denied) (mem. op.) (holding dismissing action with prejudice when granting special appearance is error). Accordingly, Walz's third issue is sustained.

CONCLUSION

The trial court's order is modified to dismiss the underlying cause without prejudice. The trial court's order is affirmed as modified.

                                                         Catherine Stone, Chief Justice